McManus, Respondent, vs. Home Insurance Company, Appellant.

*February 5—March 4, 1930.*

The cause was submitted for the appellant on the brief of *Clarence E. Rinehard* of Chippewa Falls, attorney, and *Lord, Wire & Cobb* of Chicago, Illinois, of counsel, and for the respondent on that of *Alexander Wiley* and *Robert L. Wiley*, both of Chippewa Falls.

OWEN, J.   On the 26th day of October, 1927, the defendant issued to the plaintiff its contract or policy of insurance insuring the plaintiff against the destruction of property therein described, by fire, "while located and contained as described herein."   Household and kitchen furniture, wearing apparel, etc., were covered in the sum of $500.   Under item 17 of the description of the property insured, "harness, saddles, robes, blankets, whips, carriages, buggies, sleighs, wagons, including hay racks, and all other farm vehicles" were insured in the sum of $300 "while on or temporarily off the premises."

The plaintiff was a farmer.   For a number of years it had been his usual custom to run logging camps and con-

duct logging operations in Northern Wisconsin, at considerable distances from his farm. These logging operations were conducted at no fixed place. During a period of a number of years when he had conducted these operations he had logged in one place but two years. At the time of the issuance of the policy in question there was stored in a storehouse on his farm a number of horse blankets, which were usually and customarily used by him as bunk coverings in his logging camps. On or about the 20th day of February, 1928, sixty-seven pairs of said blankets were destroyed by fire while they were being used in the manner indicated in a logging camp operated by him in Ashland county, Wisconsin. The defendant refused adjustment under the policy on the ground that they were not insured under the terms of the policy, because at the time of the fire they were neither "on or temporarily off the premises" where located at the time of the issuance of the policy. The court directed a verdict in favor of the plaintiff, and the defendant brings this appeal.

It is first contended by the appellant that these blankets were covered by item 2 of the policy, which insures household and kitchen furniture. This argument is based upon the fact that, although the blankets were horse blankets, they were used for bed coverings, and, consequently, fall within the general description of household furnishings. At the time the policy was issued these blankets were not within the house, but were stored in a separate building on the farm. They had never been used as household furnishings, and the agent of the company knew the use to which they were devoted by the insured. Not being articles commonly devoted to household purposes, not having been purchased or kept for that purpose, and never having been used as such, we discover no reason for holding that they were included under item 2 of the policy, the property described therein being covered only while it is on the premises de-

scribed in the policy. The blankets were in fact horse blankets. They were appropriately referred to in item 17 already quoted. They are not only appropriately included within that item, but they were deliberately included therein by the agent who wrote the policy, with whom insured agreed as to the amount of coverage to be placed on that item after it was determined that the blankets should be included therein. The property included in item 17 is insured while "on or temporarily off the premises."

The defendant contends that the absence of these blankets from the premises was not temporary in its nature. The antithesis of "temporary" is "permanent." It would seem plain that their absence from the premises was either temporary or permanent in its nature. Their absence from the premises was usual, in the light of the purposes to which they were devoted by the insured. They had no permanent status at any place other than the farm. Although plaintiff removed them from his farm during the winter months for use in his logging camps, they were invariably returned to his farm after the logging season was over. Whenever he removed them from the farm at the beginning of the winter season it was his intention to return them to the farm at the end of the logging season. Their presence in the logging camps, like his own, was temporary and was to continue only while the logging operations were being conducted during the logging season. The word "temporary" has no fixed meaning in the sense that it designates any fixed period of time. It is a word used in contradistinction to "permanent." In many connections whether an absence is temporary or permanent depends upon whether there is an intention to return, or in case of property there is an intention on the part of the owner that it shall be returned to the place from which it is taken. While this is not always controlling, as the word "temporary" may be used under circumstances excluding protracted periods of time, it is of potent significance here.

There is no doubt that the insured removed these blankets to the logging camps at the beginning of the logging season with the intention of returning them to his farm after the logging season was over. This clearly negatives the idea that the removal was permanent. If not permanent it must have been temporary.

It is certain that the company intended to insure these blankets. The agent of the company knew the use to which these blankets were devoted. He knew that they would be taken into the logging camps during the winter season. In view of this knowledge, the policy expressly covered them "while on or temporarily off the premises." Unless the policy be construed to include the specific removal within the minds of both parties at the time the policy was written, the plain purpose of the contract would be defeated.

There is a slight discrepancy between the testimony of the agent and the insured as to what was said with reference to this removal at the time the policy was written. The agent testified that he did not tell the insured that the blankets would be insured while at the logging camp. He says: "I did not tell him that way. He asked me about it, if it would be insured there, and I said, anything temporarily on or off the premises would be insured. But I didn't know how broad a view the company would take of it." Although the insured denies that the agent said he "didn't know how broad a view the company would take of it," the discrepancy was insufficient to make a jury issue. The company's view is immaterial. We conclude that the blankets were temporarily off the premises within the meaning of the language used in item 17 of the policy. The views herein expressed find support in *Noyes v. Northwestern Nat. Ins. Co.* 64 Wis. 415, 25 N. W. 419; *Moore v. Smead,* 89 Wis. 558, 62 N. W. 426; *Lathers v. Mutual Fire Ins. Co.* 135 Wis. 431, 116 N. W. 1.

It is further contended that the insurance was nullified because the hazard was increased when the blankets were removed from the farm to the logging camp. In response to this contention there are two sufficient answers. In the first place, the property is insured by the express terms of the policy while it is on or temporarily off the premises. The coverage provided by the policy while the property is temporarily off the premises is not affected by the varying degrees of hazard to which it is then subjected. If such were the case, insurance during temporary absence of the property would be rather insecure protection. In the second place, there is no evidence in the case to establish the fact that there was an increase of hazard. There is no evidence to show that a higher rate was charged upon property in a logging camp than upon a farm. The only testimony upon that subject is that of defendant's agent, who testified: "I am sure the insurance rate would be higher at a logging camp than at a farm because there is more of a hazard." He does not testify that the rate is higher or that he knows it is higher, nor does he testify that the experience of insurance companies shows that the hazard is greater under such circumstances. His statement that "there is more of a hazard" is merely the expression of his individual opinion, and there is nothing to show that he is qualified to testify as an expert upon that question. Even though increase of hazard constituted a defense, his testimony did not raise a jury issue upon that question.

*By the Court.*—Judgment affirmed.