(628 P.2d 1076)
No. 51,746

EARL P. WINSOR, *Appellee*, v. HARTFORD FIRE INSURANCE COMPANY, *Appellant.*

Petition for review denied July 15, 1981.

Opinion filed May 29, 1981.

*Steven D. Gough,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellant.

*Charles W. Harris,* of Curfman, Harris & Weigand, of Wichita, for appellee.

Before JUSTICE HOLMES, presiding; MEYER, J.; and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: This is an action by the plaintiff, as an insured, to recover for a theft loss under a homeowner's policy issued by the defendant.

The premises insured were located at 7423 Tanglewood Court, Wichita, Kansas, owned by the plaintiff, and in which his widowed mother and his son resided.

Plaintiff resided in apartment 828 located at 505 North Rock Road, in Wichita. On September 17, 1977, during the policy period, plaintiff's apartment was burglarized while he was out for breakfast, and a television set, turntable and stereo equipment of a value of $977.85 was stolen. Plaintiff's claim for recovery under the policy was denied by defendant on the grounds that plaintiff's apartment was not a "temporary residence" and that coverage for the theft was excluded under the policy. The trial court granted summary judgment in favor of plaintiff and defendant has appealed.

At the outset, defendant contends the case was not ripe for summary judgment for the reason that a material question of fact was presented as to whether plaintiff was temporarily residing in

the apartment. Both plaintiff and defendant filed cross-motions for summary judgment and filed statements of uncontroverted facts in support of their motions. A review of the record shows that there was no genuine dispute of the essential material facts and that the matter was ripe for summary judgment. *Farmers Ins. Co. v. Schiller*, 226 Kan. 155, Syl. ¶ 1, 597 P.2d 238 (1979).

The policy in question is a standard homeowner's policy which provides coverage on unscheduled personal property in the amount of $18,000. Under the heading of Description of Property and Interests Covered, it provides:

"Coverage C — Unscheduled Personal Property. This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by the Insured while on the described premises. . . . This coverage also includes unscheduled personal property while elsewhere than on the described premises, anywhere in the world."

The exclusion relied on by the defendant in denying coverage is as follows:

"C. Theft exclusions applicable to property away from the described premises:
"This policy does not apply to loss away from the described premises of:
"(1) property at any location owned, rented or occupied by an insured, except while an insured is temporarily residing thereat. . . ."

The record shows that plaintiff owned the house at 7423 Tanglewood Court. His son, who was attending Kansas University, lived there when he was not in school, as did plaintiff's widowed mother, who lived there rent free. Plaintiff, who was divorced and single, desired a place with some privacy where he could entertain social friends. He therefore rented the apartment in January or February of 1975 on a year's lease, which he had renewed each year.

Plaintiff testified that he is self-employed in the oil and gas production business, and that he maintained a bedroom and an office at the Tanglewood address. He listed the Tanglewood address on his passport, income tax returns, voter registration, a number of charge accounts, and in the Wichita Country Club directory. All of his permanent records are kept there.

In his deposition, however, plaintiff admitted that in 1975, 1976, 1977 and 1978, he had never stayed overnight at the Tanglewood address except when both his mother and his son were away from Wichita. According to plaintiff, he had stayed at his apartment at least 48 weeks out of the year. During these

years, he also listed his residence in the telephone directory at the Rock Road address. The only person listed in the telephone directory as a resident at the Tanglewood address was his mother.

Plaintiff further testified that he considered the Tanglewood residence as his permanent residence, but that he had no intention of returning to live there as long as his mother continued to reside there.

The controlling issue then is whether plaintiff was "temporarily residing" at his Rock Road apartment within the meaning of that term as used in the policy.

Plaintiff's position is that whether a residence is temporary is a matter of intent, that the facts support his intent to maintain the Tanglewood residence as his permanent residence and the apartment as his temporary residence, and that under the plain meaning of the policy the theft was covered.

Defendant contends that, as used in the policy, the term "temporarily residing" does not include another residence maintained by plaintiff over a protracted period of time as his principal and full-time residence.

Neither party contends that the language of the exclusion is ambiguous. Similar terms have been held to be clear and unambiguous. *Bryan v. Granite State Ins. Co.*, 185 So. 2d 310 (La. App. 1966); *Heuer v. N.J. Manufacturers Ins. Co.*, 127 N.J. Super. 80, 316 A.2d 74 (1974). The words are to be construed then, according to their "natural and ordinary meaning." *Kansas Farm Bureau Ins. Co. v. Cool*, 205 Kan. 567, 471 P.2d 352 (1970).

The word temporary has been defined as meaning the opposite of permanent. Neither term is an absolute, however. Each is relative to the other. *McManus v. Home Ins. Co.*, 201 Wis. 164, 229 N.W. 537 (1930). It thus becomes an exercise in semantics to argue that a residence has to be temporary if it is not permanent. The term has a more comprehensive meaning.

Webster's New Collegiate Dictionary (1977 ed.) defines temporary as "during a limited time," and as "lasting for a limited time." Black's Law Dictionary 1634 (4th ed. rev. 1968) defines the word as "[t]hat which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration," and defines the word "temporarily" as "not of long duration." "Permanent" is also defined in Webster's New World

Dictionary (Second College Edition, 1970) as "lasting a relatively long time."

In *McManus v. Home Ins. Co.,* 201 Wis. 164, the court, in ruling on whether insured property was "temporarily off the premises," stated:

"The word 'temporary' has no fixed meaning in the sense that it designates any fixed period of time. It is a word used in contradistinction to 'permanent.' In many connections whether an absence is temporary or permanent depends upon whether there is an intention to return, or in case of property there is an intention on the part of the owner that it shall be returned to the place from which it was taken. While this is not always controlling, *as the word 'temporary' may be used under circumstances excluding protracted periods of time,* it is of potent significance here." p. 167. (Emphasis added.)

Considerable reliance has been placed on *Littell v. Millemon,* 154 Kan. 670, 121 P.2d 233 (1942), an election contest case. The rules for determining residence for voting purposes are conceptually different from property insurance cases. They are governed by constitutional requirements (Art. 5, § 3, Kansas Constitution), K.S.A. 77-201 (23), and various election statutes, and not by contract. A person may maintain a "permanent residence" for voting purposes indefinitely at someone else's home, such as his parent's home (*Campbell v. Ramsey,* 150 Kan. 368, 92 P.2d 819 [1939]), without residing there or keeping property there, a concept that is entirely foreign to the concept of a homeowner's policy, which is designed to afford liability and property insurance coverage to a described premises and its contents.

Several courts have had occasion to rule on similar terminology. These cases, while helpful, are not dispositive here. In *Heuer v. N.J. Manufacturers Ins. Co.,* 127 N.J. Super. 80, the theft was from a cottage used as a summer home which the insured occasionally occupied on winter weekends. During a three-weeks' absence, his fishing equipment was stolen, and he sought recovery under a homeowner's policy. The court held that the insured was not "residing" in the premises at the time of the theft and denied recovery.

In *Bryan v. Granite State Ins. Co.,* 185 So. 2d 310, the insured owned a home in Lacombe, Louisiana, but maintained his office in New Orleans. In addition, he maintained an apartment in New Orleans which he used to maintain contact with his friends and in which he and his wife occasionally stayed overnight. A theft occurred from the apartment at a time when the insured was

living at home in Lacombe and the apartment was vacant. The court denied recovery under a homeowner's policy for the reason that the insured was not residing therein at the time of the theft.

In *Sanders v. Insurance Co.,* 20 N.C. App. 691, 202 S.E.2d 477 (1974), the insured maintained a home in Winston-Salem where his family lived. He went to work for the Pennsylvania Ballet Company and rented a room in Philadelphia where he lived during the ballet season. While on a five-day trip to Pittsburgh in connection with his work, some property was stolen from his apartment in Philadelphia. The court granted recovery under a homeowner's policy holding that he was temporarily residing in the apartment at the time of the theft.

A similar result was reached in *Chalmers v. Oregon Auto Ins. Co.,* 262 Or. 504, 500 P.2d 258 (1972), where the insured was living temporarily at a house which he was building in Odessa. His family lived at their home in Klamath Falls, on which he carried a homeowner's policy. During a short visit home to pick up his unemployment check and to shop for groceries, a theft occurred at the Odessa house. The court held that the Odessa house was "in actual use" as plaintiff's temporary residence at the time of the theft and allowed recovery.

The question of whether the residence was temporary or not was never in issue in any of these cases, since the residences were clearly seasonal or used occasionally for a short-term, definitive period of time. The issue was whether the insured was residing in the premises or actually using it as his residence at the time of the theft. None of them involved a theft from the insured's primary residence.

In construing the policy in the instant case, the court must consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished (*Bramlett v. State Farm Mutual Ins. Co.,* 205 Kan. 128, 468 P.2d 157 [1970]), and the term "temporarily residing" is to be interpreted in the context in which it was used in the policy. *Teter v. Corley,* 2 Kan. App. 2d 540, 584 P.2d 651 (1978).

We think the plain and ordinary meaning of the term as used in the policy for theft coverage has reference to a place of abode away from the insured premises used by the insured occasionally

or seasonally on a limited short-term basis. It does not include another residence maintained by an insured as his principal place of residence on a full-time basis over a protracted and indefinite period of time.

The facts here establish that at the time of the theft, plaintiff had resided at his apartment more than two and one-half years, that he slept in the Tanglewood Court residence not more than four weeks of each year, and then only on occasions when neither his son nor his mother were there. As far as the record before us shows, he continued to live in the apartment in 1978 with the expressed intention of not returning to live at his Tanglewood home as long as his mother continued to reside there, a situation that could conceivably continue to exist for a considerable time to come. Under these circumstances, he was not temporarily residing in the apartment within the meaning of the policy at the time of the theft.

In view of our conclusion here, it is unnecessary to discuss the other issues raised on appeal. Reversed.