[Civ. No. 4845.  Third Appellate District.—February 9, 1933.]

IRWIN CLARK, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, STATE COMPENSATION INSURANCE FUND et al., Respondents.

L. E. Johnston for Petitioner.

A. I. Townsend, B. E. Pemberton, Edmund D. Leonard and Ivan A. Schwab for Respondents.

PULLEN, P. J.—The petitioner asks this court to review that portion of the findings and award entered by the In-

dustrial Accident Commission in a proceeding which holds specifically that defendant employer was not covered by the terms of a compensation insurance policy issued to him by the State Compensation Insurance Fund.

The admitted facts are that Clark Brothers were the owners of a grain harvester which they used not only to harvest their own crops but also the crops of their neighbors. Among others they harvested the crops of Howard Clark. Howard Clark had no interest in the harvester, but by agreement with Clark Brothers he was given the privilege of selecting one of the two sack bucks on the outfit, and during the time the harvester was working on his ranches he paid the wages of the sack buck he had selected. The duties of the sack buck are to follow the harvester in the field and gather the sacked grain as it is dropped from the harvester and take it to the warehouse or other point designated by the owner. Under such agreement Howard Clark selected his nephew Irwin Clark, the petitioner herein, as sack buck. Irwin Clark was a young man residing with his father at Monticello, which is about five miles from the ranch of Howard Clark, where the injury hereinafter referred to occurred.

Irwin Clark began work with the harvester in the latter part of June, and after working on the ranches of Clark Brothers the outfit moved to the Howard Clark ranch about July 12th, and began harvesting there. The custom of the neighborhood, and the practice on the Howard Clark ranch, was that while the harvester was on his ranch he boarded the threshing crew and provided sleeping quarters, the men, however, furnished their own bedding. On the particular occasion here in question, the weather being hot, the men were sleeping outside of the bunkhouse. While thus employed and under the circumstances as detailed, Irwin Clark sustained the injury for which he is seeking compensation.

The policy of insurance issued to Howard Clark by respondent State Compensation Insurance Fund and in force at the time of the accident contained the following provision:

"It is agreed that this policy does not extend to or cover injuries or death resulting therefrom sustained by any relative by blood or marriage . . . of the insured, . . . when

such relatives are living on the premises occupied by the insured and/or in the household of the insured unless such relative is specifically mentioned by name in the schedule as covered by the policy or by endorsement attached to the policy.''

The Industrial Accident Commission in its findings denied petitioner any award against the State Compensation Insurance Fund on the ground that ''on July 12, 1932, the date of the injury herein, the policy of the State Compensation Insurance Fund was of an exclusive type, excluding relatives living on the premises occupied by the insured and/or in the household of the insured and at the time Irwin M. Clark was a relative of the employer herein and living on his premises and hence the coverage of this case does not extend to the above injury.''

The question here involved concerns the status of petitioner and the interpretation to be given to the word ''living on the premises'', as used in the foregoing proviso.

It is admitted that Howard Clark is the uncle of Irwin Clark and that Irwin Clark was not specifically mentioned by name in the schedule or in an indorsement attached to the policy.

It is not claimed that the petitioner was a member of the household of the assured, as he lived with and under the same conditions as the balance of the harvester crew. Under what particular circumstances the presence of a person would constitute ''living on the premises'' we do not attempt to here state. Each case depends upon its own particular facts and all we can say is that a member of a harvesting crew present on the premises for a specific temporary purpose does not constitute ''living on the premises''.

Respondent has cited several cases to show that ''living'' has been construed as meaning ''the fact of existing in a certain place''.

In *Hanson* v. *Graham*, 82 Cal. 631 [23 Pac. 56, 7 L. R. A. 127], it is held that the section governing attachment of property of nonresidents referred to actual as distinguished from constructive or legal residence, notwithstanding the general intention to return to the place of legal residence domicile.

In *Long* v. *Ryan*, 30 Gratt. (Va.) 731, quoted in the above-entitled case, held to the same effect and also held that in "statutes relating to taxation settlements, the right of suffrage, qualification for office, it may have a very different construction from that which belongs to it in the statutes relating to attachments".

In the case of *O'Brien* v. *O'Brien*, 16 Cal. App. 103 [116 Pac. 692, 693], the court said "the statement of a witness that he lived at a certain street and number in a specific city was not inconsistent with his residence in another county since a person may live in one place and have a legal residence in another".

From the foregoing it appears that the word "live" is at least ambiguous and therefore the rule which is well established that where the language of an insurance contract is ambiguous it will be construed most strongly against the insurer, is applicable in the present proceeding.

We recognize the far-reaching effect of this opinion for the provision here called in question is contained in every policy of compensation insurance issued to an individual in this state, it having been promulgated in 1929 by the insurance commissioner and the Industrial Accident Commission under authority granted in section 31a of the Workmen's Compensation Insurance Safety Act of 1917.

Prior to 1929 the provision read: "It is agreed upon the delivery and acceptance of this policy that if the employer is an individual and has a family . . . residing within this employer's household, this policy shall not apply to any member or members of such family except those named in the declarations. . . . "

It will be noted that the provision originally excluded relatives "residing within this employer's household" whereas it now excludes relatives "living on the premises occupied by the insured and/or in the household of the insured".

It is obvious that the amendment has enlarged the scope and field of the proviso, but we do not believe it can be carried to the extent urged by respondents. Under their interpretation every member of the harvesting crew would be held to be living on the premises of Howard Clark during the period of employment. If the Commission had intended that mere presence was to be the test they would have

clearly so expressed it. To hold that a nephew, who resided in Monticello with his father, but was injured while employed for a brief period as a member of a harvesting crew by his uncle, was "living on the premises", is not only a strained interpretation of the statute but a violation of the canon of construction contained in the act itself.

■ "Whenever this act or any part or section thereof is interpreted by a court it shall be liberally construed by such court for the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment." (Section 69a of the Compensation Act.)

In accordance therewith the provisions of the contract limiting or avoiding liability must be construed strictly against the insured and all ambiguity resolved against the insurer. (*Everett* v. *Standard Ins. Co.*, 45 Cal. App. 332 [187 Pac. 996]; *Welch* v. *British American Assur. Co.*, 148 Cal. 223 [82 Pac. 964, 113 Am. St. Rep. 223, 7 Ann. Cas. 396]; *Maryland Casualty Co.* v. *Industrial Acc. Com.*, 178 Cal. 491 [173 Pac. 993].)

Webster's New International Dictionary defines the word "living" as meaning to abide, to dwell, to reside; and defines the word "reside" as "to dwell permanently or for a considerable time; to have a settled abode for a time".

Ballentine's Law Dictionary defines the word "live" as meaning, "to live in a place is to reside there, to abide there", and defines "reside" by saying, "persons who are said to reside in a place usually include all those who are the actual stated dwellers there even though they may have a technical domicile elsewhere".

In Words and Phrases, "to live, to reside, to dwell, to have one's home, are usually equivalent and convertible terms".

"Where in the gift of a house there was a condition that the donee should 'live and reside' therein, it was held the word 'live' added nothing to its point." (T. & R. 530.)

We are therefore of the opinion that in view of the ambiguity existing in the phrase "living on the premises" and the admonition imposed on the court as to liberality of construction we must hold that under the facts here adduced petitioner was not "living on the premises" and is therefore

protected by the terms of the policy, and the award of the Commission heretofore entered is annulled.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1933.