[Civ. No. 5146. Third Appellate District.—September 4, 1934.]

ROBERT LEROUX, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION, etc., et al., Respondents.

Frank L. Murphy for Petitioner.

Everett A. Corten, Redman, Alexander & Bacon and R. P. Wisecarver for Respondents.

THOMPSON, J.—This is a review of an order of the Industrial Accident Commission refusing to make an award of compensation against an insurance company for injuries received by the petitioner in the course of his employment while he was engaged in performing farm labor for his brother, W. G. Leroux.

The only question involved in this proceeding is whether the Aetna Life Insurance Company, which was the insurer of the petitioner's employer, is exempt from liability for the injuries sustained on account of the clause which was attached to the policy in the following language:

"It is agreed that, anything in this Policy to the contrary notwithstanding, this Policy does not insure: As respects injuries (or death resulting therefrom) sustained by any of the following relatives of the employer or of his wife, i. e., . . . brother, . . . when any of the said relatives are living on the premises occupied by the employer and/or in the household of the employer, unless such relative is specifically named in the declarations or in endorsement attached to this Policy."

The petitioner is a widower fifty years of age. He served in France as an American soldier during the World War. His wife and child are dead. For several years after returning from the war he lived alone in the city of Sacramento, where he engaged in the furniture business, as a salesman of stocks and bonds and as a collector of bills. After 1929, when employment became difficult to secure, he worked as a farm-hand for various orchardists in the vicinity of Sacramento. He did not own a home or household furniture, but rented rooms in different apartments in Sacramento, which he vacated while he was employed elsewhere outside the city. For more than ten years prior to the accident he registered for the purpose of voting and maintained a postoffice box in Sacramento. He testified in that regard: "My permanent address is Sacramento." He did

say in the course of his cross-examination, "My home is any place where my hat is." This statement is clearly contrary to his repeated declarations and evident intention. His brother, W. G. Leroux, owned a prune ranch in Alexander Valley near Healdsburg, upon which he had resided with his family for many years. In September, 1931, the petitioner went from Sacramento to visit his mother, who lived at Healdsburg. While he was there he telephoned his brother asking him for employment as a farm-hand. The brother hired him for the balance of the prune-picking season, which was about two months' duration, at the agreed wages of $4 a day, from which he was to repay his brother $1 a day for room and board. He was directed to load prune boxes on a truck. There is evidence indicating that the petitioner might have been retained after the prune crop was harvested, provided other service on the ranch was required. This subsequent employment was conditional, uncertain and lacked specific agreement of any sort.

The petitioner had never before worked for his brother and was never a member of his household. He had not even visited him for many years previously. He began his work of loading the truck on September 7th. While he was thus engaged for about two days he ate his meals and slept in his brother's house. There is evidence that he slept there but a single night. On the second day of his employment he fell from the truck and dislocated his spine. He was seriously injured. For a few days thereafter he was treated by a local physician. He said that he then "wrote the insurance company I was not satisfied (with the treatment) and I would like to come to Sacramento *where I lived,* and they told me to report to Dr. Harris". In a week or ten days after the accident occurred he returned to Sacramento, where he was confined in the Sutter Hospital for a period of time. He then secured private rooms on J Street, where he has ever since lived. There is no substantial dispute regarding the foregoing facts.

Upon application to the Industrial Accident Commission for compensation, it determined that the petitioner sustained a fractured vertebra while he was engaged in the course of his employment with his brother, resulting in 42½ per cent permanent disability; that the petitioner did *not* then reside on the premises of his employer; that the Aetna Life Insurance Company was the insurer of his employer and that the

policy contained the exemption clause above quoted. Thereupon the petitioner was awarded compensation in the sum of $2,616.30, being $15.39 a week for the period of 170 weeks, against both his brother and the insurance company. The cause was dismissed against Mr. Cadd for the reason that it appears he was not interested in the farming enterprise.

Upon subsequent application therefor by the Aetna Life Insurance Company a rehearing was granted. The award was set aside. The board adopted the foregoing findings of facts except that it was then determined that "At said time [when the accident occurred] the employee was a brother of the employer and living in the household of the employer and as such the injured employee herein is *not* covered by Workmen's Compensation Policy of the Aetna Life Insurance Company." Compensation against the insurance company was accordingly refused, but it was awarded against the employer in the exact amount above specified. From the order denying compensation against the insurance company the petitioner instituted this proceeding.

We are of the opinion the board erroneously determined that the petitioner was "living in the household of the employer" within the meaning of that language as it is used in the exemption clause of the policy. We are satisfied the petitioner is entitled to compensation against the insurance company for injuries which he sustained, under the provisions of the Workmen's Compensation Act. Taking the record as a whole, it seems unreasonable to conclude from the evidence adduced that the petitioner was actually "*living on the premises* occupied by the employer and/or in the household of the employer" at the time of his accident.

The identical clause of the insurance policy which is involved in this proceeding was construed under similar circumstances in the case of *Clark* v. *Industrial Acc. Com.*, 129 Cal. App. 536 [19 Pac. (2d) 44], in which a hearing by the Supreme Court was denied. It was there held in the language of section 69a of the Compensation Act that: "Whenever this act or any part or section thereof is interpreted by a court it shall be liberally construed by such court for the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment."

It is further said in that regard that in accordance therewith the provisions of the contract limiting or avoiding liability must be construed strictly against the insurer and all ambiguity resolved against the insurer. It is there held in accordance with reason that in construing this clause of the policy each case must depend upon its own particular facts in determining whether the employee actually resides on the premises or in the household of his employer.

In the Clark case, the claimant had previously resided with his father at Monticello. He was employed by his uncle to work on a harvester for specified wages which included his room and board. During his employment he actually ate his meals and slept in his uncle's home. An accident occurred and he was injured in the course of his employment. The court held he was not residing in the household of his employer in the sense in which that language is used in the exemption clause of the policy.

From the record in this case we are driven to the inevitable conclusion that the petitioner was not a member of his brother's household and did not live with him in the sense in which that term is used in the exemption clause of the policy. It is evident that the petitioner's eating and sleeping in his brother's house was merely temporary, transitory and incidental to his limited employment on the premises during the prune-picking season. It was in no sense his abiding place. In the case of Clark, *supra,* the term "living" as applied to the construction of this very exemption clause is defined as follows:

"Webster's New International Dictionary defines the word 'living' as meaning to abide, to dwell, to reside; and defines the word 'reside' as 'to dwell permanently or for a considerable time; to have a settled abode for a time'.

"Ballentine's Law Dictionary defines the word 'live' as mean'ng, 'to live in a place is to reside there, to abide there', and defines 'reside' by saying, 'persons who. are said to reside in a place usually include all those who are the actual stated dwellers there even though they may have a technical domicile elsewhere'.

"In Words and Phrases, 'to live, to reside, to dwell, to have one's home, are usually equivalent and convertible terms'."

Strictly speaking, the term "living" implies a state of existence. It signifies literally the pecuniary resources by

means of which one exists. (Crabb's English Synonyms, p. 486.) The term has been distorted to include also the place where one abides. It, however, implies a fixed, regular, established place of abode or residence with the idea of at least relative permanency, as distinguished from mere temporary or transitory presence at a particular place for a brief time and a limited purpose.

The exemption clause in the policy which is involved in this case was properly adopted to prevent collusion between an insured person and blood relatives or members of his household. No such collusion is suggested in the present case. The employment of the petitioner is conceded. It is not denied that he was actually injured in the course of his employment. It would seem to require an unreasonable construction of the facts of this case to hold that the petitioner was actually "living on the premises or in the household" of his brother merely because the terms of his employment required him to eat his meals and sleep in the house for a brief period of time during the prune-picking season. He considered Sacramento his place of residence and his home. He had maintained his registration there for fifteen years for voting purposes. He also retained a post-office box in that city during all that time. He always returned to Sacramento when his temporary employment outside of the city was completed. Conceding that one may have a permanent residence in one city and at the same time be deemed to be living in another place, the mere temporary presence in an employer's home, or the eating of meals and sleeping therein during a brief and limited employment, does not constitute living on the premises or in the household within the meaning of the exemption clause of the contract. In this case the petitioner merely ate four meals and slept one night in his brother's home. He had never before stayed in his house. The minute he was able to leave the premises after his accident occurred he went back to Sacramento. It would be a grave injustice and a violation of the reasonable construction of the contract to hold that under such circumstances an employee is a resident on the premises or a member of the household of his employer.

The order denying compensation to the petitioner against the Aetna Life Insurance Company is annulled and set aside, and the Industrial Accident Commission is directed to render an award in his favor upon the same terms and con-

ditions under which compensation was awarded against the employer.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 4, 1934, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 1, 1934.