ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, v. JAMES STEWART *et al.*, Defendants-Appellants.

Second District Nos. 2—86—0540, 2—86—0579 cons.

Opinion filed July 16, 1987.

Alfred W. Cowan, Jr., and Thomas G. Ruud, both of Brassfield, Cowan & Howard, of Rockford, for appellant Ralph David Banks.

Peter S. Switzer, of Barrick, Switzer, Long, Balsley & Van Evera, of Rockford, for appellants James Stewart and Marilyn Stewart.

Jeffrey M. Goldberg, James T. Ball, and Constance R. O'Neill, all of Jeffrey M. Goldberg, Ltd., of Chicago, for appellant Chris Eggermont.

D. Kendall Griffith, Peter C. Morse, and Catherine E. Hopkins, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendants, James Stewart, Marilyn Stewart, Ralph David Banks, Chris Eggermont, individually and as next friend of her minor daughter, Maria Montez, appeal from a trial court order granting the motion of the plaintiff, Allstate Insurance Company, for judgment on the pleadings.

Maria Montez was injured when she was run over by a tractor-type riding lawn mower operated by her brother, Louis. As a result of the accident, Maria's left leg was severed. The accident occurred at the home of James and Marilyn Stewart, the parents of Chris Eggermont, who were away for the weekend. The Eggermont family was spending the weekend at the Stewart home.

Chris, on behalf of herself and Maria, filed a lawsuit for damages against the Stewarts and Banks, the Stewarts' caretaker, alleging that the defendants were negligent in allowing Louis to operate the riding lawn mower. Thereafter, the Stewarts and Banks filed counterclaims against Chris, seeking contribution pursuant to the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*).

At the time of the accident, Chris was the named insured under a homeowner's policy issued by the plaintiff. Plaintiff undertook Chris' defense under a reservation of rights letter. Thereafter, plaintiff filed an action for declaratory judgment seeking a determination that Chris' homeowner's policy in effect at the time of the accident did not require the plaintiff to defend Chris on the contribution action. Plaintiff filed a motion for judgment on the pleadings. After the submission of briefs and oral argument, the trial court granted the motion and entered judgment for plaintiff. This appeal followed.

On appeal, the defendants raise the following issues: whether the trial court erred in finding that the Eggermont family was not "temporarily living" at the Stewart home; and whether section 143.01 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01) renders the exclusionary clause of the homeowner's policy inapplicable to the contribution action brought against Chris.

Chris' homeowner's insurance policy with plaintiff provided in pertinent parts as follows:

"Definitions Used In This Policy

\* \* \*

3. Insured person—means you (named insured) and, if a resident of your household:
a) any relative; and
b) any dependant person in your care.

* * *

7. Insured premises—means
   a) the residence premises; and
   b) under Section II only;
      1) any other residence premises described on the declarations page;
      2) any other residence premises you acquire during the premium period;
      3) any part of a premises not owned by an insured person but where an insured person is temporarily living;

* * *

Section II Family Liability Protection

Losses We Cover

Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.

Losses We Do Not Cover.

* * *

2. We do not cover bodily injury to an insured person or property damage to property owned by an insured person;

* * *

5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer. However this exclusion does not apply to:

* * *

d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration ***."

Defendants contend that coverage under Chris' homeowner's policy is available since she and her family were "temporarily living" at the Stewart home at the time of the accident. We note that the homeowner's policy does not contain a definition of "temporarily living."

■■ Where the words of an insurance policy are clear and unambiguous, the court should give effect to the plain and obvious import of those words. (*Dinges v. Lawyers Title Insurance Corp.* (1982), 106 Ill. App. 3d 188, 190.) A policy provision is ambiguous if, considering the policy as a whole, it is subject to more than one reasonable interpretation. (*Dolan v. Welch* (1984), 123 Ill. App. 3d 277, 280.) Where an ambiguity exists, the policy is to be construed liberally to effectuate coverage. (*Dinges v. Lawyers Title Insurance Corp.* (1982), 106

Ill. App. 3d 188, 190.) However, this rule of construction does not justify construing a contract against an insurer when no real ambiguity exists. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495.) If the words of a policy can reasonably be given their plain, ordinary and popular meaning, the provisions should be applied as written and the parties should be bound to their agreement. 105 Ill. 2d 486, 495.

Defendants argue that the term "temporarily living" is unambiguous and its plain, ordinary meaning supports their position that coverage exists. Alternatively, they argue that if the term is ambiguous, the policy must be construed in favor of coverage.

Defendants rely on two California cases, *Leroux v. Industrial Accident Com.* (1934), 140 Cal. App. 569, 35 P.2d 624, and *Clark v. Industrial Accident Com.* (1933), 129 Cal. App. 536, 19 P.2d 44. In *Leroux*, the court held that the term "living" implies a fixed, regular, established place of abode or residence with the idea of at least relative permanency, as distinguished from a mere temporary or transitory presence at a particular place for a brief time or a limited purpose. (*Leroux v. Industrial Accident Com.* (1934), 140 Cal. App. 569, 574, 35 P.2d 624, 626.) In *Clark*, the court concluded that the term "living" was interchangeable with the word residence. In *Country Mutual Insurance Co. v. Watson* (1971), 1 Ill. App. 3d 667, the court quoting from a prior case found that the word "resident" was in common usage and " 'is generally understood to mean one having more than mere physical presence.' The elements required beyond physical presence are intention and permanency of abode. [Citations.]" (1 Ill. App. 3d 667, 669.) Intention is the controlling factor in determining whether a residency has been acquired or abandoned, and that intent is gathered primarily from the acts of a person. 1 Ill. App. 3d 667, 669-70.

Plaintiff points out that the term "temporarily residing" has been defined by case law as referring to "a place of abode away from the insured premises used by the insured occasionally or seasonally on a limited short-term basis." *Winsor v. Hartford Fire Insurance Co.* (1981), 6 Kan. App. 2d 397, 401, 628 P.2d 1076, 1079.

While the term "temporarily living" has not been defined in the case law of this State, in *Reiner v. St. Paul Fire & Marine Insurance Co.* (1969), 106 Ill. App. 2d 210, the court was called upon to construe "temporarily residing." Plaintiff, a college student, rented a storage locker in the student residence she lived in during the school year. The storage locker had a one-year lease, and plaintiff was liable for the rental of the entire year. At the end of the school year, the plain-

tiff stored her property in the locker and returned to Chicago, where she resided with her parents for the summer. When she returned to college for the beginning of the fall semester, she discovered her property gone from the locker. She submitted the claim to St. Paul. The claim was denied based upon the following policy exclusion:

> " 'This policy does not apply as respects this peril (theft) to loss away from the premises of: (a) property while in any dwelling or premises thereof owned, rented or occupied by an insured, *except while an insured is temporarily residing therein* \*\*\*.' " (Emphasis in original.) (106 Ill. App. 2d 210, 212.)

Plaintiff filed a suit against St. Paul. Both parties filed motions for summary judgment. The trial court granted plaintiff's motion, and St. Paul appealed.

In reversing the trial court, the appellate court held that the plaintiff was not "temporarily residing" at the student residence at the time of the loss inasmuch as she admitted that she was away for three months. However, the court stated that it was not holding that a short absence from the temporary residence barred recovery.

■ We note that in *Reiner*, the court found that the term "temporarily residing" was not ambiguous. Upon examination of the policy in the case before us in its entirety, we agree with both parties that the term is not ambiguous. (See *Dinges v. Lawyers Title Insurance Co.* (1982), 106 Ill. App. 3d 188.) Thus the term "temporarily living" must be given its plain ordinary and popular meaning. 106 Ill. App. 3d 188, 190.

The word "temporary" is defined as "[t]hat which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration." (Black's Law Dictionary 1312 (5th ed. 1979).) The same source defines "living" as "[e]xisting, surviving, or continuing in operation. Also means to abide, to dwell, to reside \*\*\*." Black's Law Dictionary 843 (5th ed. 1979).

■■ We disagree with the trial court's finding that the Eggermont family was not "temporarily living" at the Stewart residence. According to the Chris Eggermont's discovery deposition, she and her husband and their three children arrived at the Stewart residence Friday night and spent the night there. On Saturday morning, they went to the zoo and spent Saturday night at the Stewart residence. On Sunday, prior to the accident, Chris was in the kitchen preparing lunch. Thus the family was engaged in the various activities which are part of a family's daily existence. The fact that the family did not plan to remain at the Stewarts' on a permanent basis is covered by the modifying word "temporarily." Clearly, the Eggermonts were living in the

Stewart home on a temporary basis.

Plaintiff contends that the defendants' position that there are only two categories of living situations (1) a permanent residence, and (2) any other place where one happens to be while alive is not a fair reading of the contract. Plaintiff suggests that under such an interpretation, an office where one "temporarily lives" from 8 a.m. to 5 p.m., or a neighbor's home where one is attending a cocktail party would be considered under this homeowner's policy. It argues that under the policy there exists a third category, that of merely staying at a residence.

We disagree. Neither of the two situations cited above suggest a living situation with the attendant activities such as were engaged in by the Eggermont family. Further, we note that in the first two categories under the definition of the term "insured premises," the word "residence" was used. However, in the third category, which refers to temporarily living," the word residence was omitted. We find the omission of the word "residence" significant in light of plaintiff's argument that a weekend stay does not rise to the level of "temporarily living."

We conclude that the Eggermonts were "temporarily living" at the Stewart residence at the time of the accident to Maria, and, therefore, the trial court's order granting plaintiff judgment on the pleadings must be reversed. Accordingly, we reverse and remand this case for a hearing on the second issue raised which was not considered by the trial court, to wit, whether the family household exclusion in the policy is enforceable in this case in light of section 143.01 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01).

The judgment of the circuit court of Winnebago County is reversed and the case remanded for proceedings consistent with the views expressed in this opinion.

Reversed and remanded with directions.

HOPF and INGLIS, JJ., concur.