**In re FLEXIBLE AUTOMATION SYSTEMS, INC., Debtor.**

**James E. STEVENS, Trustee, Plaintiff,**

v.

**BARNES DRILL COMPANY, Defendant.**

**No. 88 C 20029.**

United States District Court, N.D. Illinois, W.D.

April 6, 1989.

James E. Stevens, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, Ill., for plaintiff.

David E. Schaper, Rick L. Hindmand, Keck, Mahin & Cate, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ROSZKOWSKI, District Judge.

This action comes before the Court on defendant's motion for summary judgment. For the reasons set forth in the opinion below, this Court grants defendant's motion for summary judgment with costs to be borne by the respective parties.

In the interest of brevity, and with compassion for future generations of lawyers who will have to sift through our voluminous collective judicial wisdom to find the answers to the pressing legal dilemma of their day, this Court will forego the usual detailed recitation of facts and incorporate

whatever factual matters are critical to the instant decision into the body of this opinion.

## DISCUSSION

The Court will not grant any summary judgment motion unless all of the pleadings, briefs and supporting documents, if any, indicate that there is no material question of fact and that one party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976).

The initial burden is on the moving party to demonstrate that there is no material issue or question of fact in dispute. *Rose v. Bridgeport Brass Company,* 487 F.2d 804, 808 (7th Cir.1973). Once the moving party has stated that a fact is not in question, the burden shifts to the non-moving party to demonstrate that there is some question of fact or to contradict the fact and bring it into question. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

As in most cases, this case turns on the answer to one relatively simple query. The central question here is whether the contract between the two parties to this litigation was executory or non-executory. If the contract was executory, the provisions of the Bankruptcy Code provide that the Trustee, by inaction, has rejected adoption of the present contract and there is a material breach obviating defendant's obligation to pay plaintiff any commissions. If, on the other hand, the contract is held to be non-executory, the provisions of the Bankruptcy Code § 365 are wholly inapplicable and the plaintiff is entitled to its commissions under the contract.

Defendants argue that Bankruptcy Code § 365(g) [1] is applicable because the contract is executory. Defining executory, how-ever, may not be as simple as it seems. *Black's Law Dictionary* defines executory as "[t]hat which is yet to be executed or performed; that which remains to be carried into operation or effect; incomplete; [or] depending upon a future performance or event." *Black's Law Dictionary,* 512 (5th ed. 1979). The drafters of the relevant Code section provided this insight: "Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347, rep'd in 1978 U.S.Code & Admin.News 5787, 5963, 6303. The court in *In re California Steel Co.,* 24 B.R. 185 (Bankr.N.D. Ill.1982) stated that:

> [t]he most widely accepted definition of an executory contract is [a] contract under which the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

*In re California Steel Co.,* 24 B.R. at 187. Therefore, if there are mutually binding obligations which remain unperformed by the respective parties, the contract must be construed as executory in nature and therefore under the ambit of Bankruptcy Code § 365.

The Sales Representative Agreement ("Agreement") provides for a number of "mutual covenants" between Flexible Automation Systems, Inc. ("Gram") and Barnes Drill Co. ("Barnes").

Paragraph 1 states the following:

1. *Appointment.* Barnes hereby appoints Gram as its independent, non-exclusive sales representative, at Gram's sole cost and expense, to solicit offers to purchase Equipment from customers and potential customers worldwide. Gram

---

**1.** Section 365(g) of the Bankruptcy Codes states the following:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract of lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition ...

hereby accepts such appointment and agrees to act as sales representative in accordance with the terms and conditions hereof.

Paragraph 2 of the Agreement reads as follows:

*Obligation of Gram.* Gram's duties as sales representative hereunder shall be limited to marketing and soliciting orders for the Equipment, which orders shall be considered as arising from customers of Barnes. Barnes may, in its sole discretion, accept or reject any orders, in whole or in part, for any reason whatsoever. In acting as sales representative hereunder, Gram shall: (i) use its best efforts to promote and sell the Equipment, (ii) assume full responsibility for the actions of all of its sales people, subagents or other representatives, and take such steps as may be necessary to prevent violation by any of them of the terms of this Agreement, (iii) adhere strictly to the selling prices, terms and conditions fixed by Barnes for the Equipment, (iv) immediately forward to Barnes all orders received and (v) keep accurate and complete records of sales made and make such reports as Barnes may reasonably request.

Paragraph 5 of the Agreement states: *Confidentiality.* Gram acknowledges that, in performing its duties hereunder, it will have access to the confidential and proprietary information of Barnes, not generally known to the public or the trade (hereafter, "Proprietary Information"). Gram agrees, for itself and its successors and assigns, that it shall not at any time make known, divulge or communicate to any person, firm or corporation, except as permitted herein, any of such confidential Proprietary Information. Gram may disclose Proprietary Information only to those of its employees and subcontractors as shall be necessary to enable Gram to promote and sell the Equipment, and Gram agrees to take all proper precautions against disclosure to unauthorized persons by such employees and subcontractors ...

One other paragraph of the Agreement outlines the obligation of Barnes to pay commissions to Gram.

One of the most basic rules of contract law provides that when the words used in the contract are clear and unambiguous, the plain meaning of the words should control and "the court should give effect to the plain and obvious import of those words." *Allstate Insurance Co. v. Stewart,* 158 Ill. App.3d 129, 131, 511 N.E.2d 188, 189, 110 Ill.Dec. 353, 354 (2nd Dist.1987) *citing Dinges v. Lawyer's Title Insurance Corp.,* 106 Ill.App.3d 188, 190, 435 N.E.2d 944, 946, 62 Ill.Dec. 146, 148 (1982). "If the words of a [contract] can reasonably be given their plain, ordinary and popular meaning, the provisions should be applied as written and the parties should be bound to their agreement." *Stewart,* 158 Ill. App.3d at 132, 511 N.E.2d at 189, 110 Ill. Dec. at 354, *citing Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 495, 475 N.E.2d 872, 876, 86 Ill.Dec. 493, 497 (1985). Therefore, the only time the plain meaning of the words will not be strictly applied is when there is an ambiguity. A contract provision is considered ambiguous if, considering the contract as a whole, the language in question may be subject to more than one reasonable interpretation. *Dolan v. Welch,* 123 Ill.App.3d 277, 280, 462 N.E.2d 794, 796, 78 Ill.Dec. 675, 677 (1984).

In the present case, plaintiff asks this Court to find that at least three of the paragraphs in the Agreement, or possibly even the entire Agreement, was basically as meaningless and empty a gesture as the remains of Gram was an empty shell. This interpretation is urged because both parties to the Agreement knew that Gram had no sales force, no employees, and had discontinued business altogether. Therefore, plaintiff suggests Gram had no obligations which remained unperformed on the very date the Agreement was signed.

Unfortunately for plaintiff, this scenario flies in the face of the plain and unambiguous words of the contract. Plaintiff adds a number of concurrent obligations including using best efforts to sell certain equip-

ment *and* maintaining the confidentiality of certain proprietary information.

While Gram may have ceased operations as they previously existed, there no doubt remained members of the Board of Directors and Officers of the corporation who were still obligated under the Agreement and could have fulfilled the limited role of sales representatives for these particular and enumerated pieces of equipment. However, even assuming *arguendo* that Gram was never expected to, nor capable of, performance of the obligations as sales representatives, whoever and whatever was left of Gram was certainly still duty-bound to maintain that level of confidentiality spelled out in the Agreement.

Surely a breach of that confidentiality by Gram would have constituted a material breach of the Agreement sufficient to excuse the performance of Barnes on the contract.

Therefore, this Agreement must be held to be executory in nature.

Lastly, if this Agreement was meant to provide some lesser degree of participation and protection by the parties, the Agreement itself should have so specified; the parties were dealing at arm's length, were both presumably represented by counsel or competent to bargain on their own behalf and knew or should have known to the contents of the Agreement signed by both parties. This Court should not, and will not use the rules of contract interpretation to save a party from a bad deal or even a silly bargain—especially because it only appears to be a bad deal in retrospect given the subsequent events of filing for reorganization.

The Bankruptcy Code, in §§ 365(a) and 365(d)(1), provides a mechanism for ratifying an executory contract.[2] The trustee in bankruptcy could have so ratified this Agreement, continuing to bind both parties. However, this was not done.

Therefore, based on the foregoing, this Court holds the instant contract to be executory, finds the provision of Bankruptcy Code § 365(d) to be applicable, and grants defendant's motion for summary judgment.

---

2. Code § 365(a) provides that "... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

Code § 365(d)(1) further provides that (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.