COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. PEOPLES BANK, Special Adm'r of the Estate of Louise Osborn, Deceased, *et al.*, Defendants-Appellants.

Fourth District   No. 4—96—0024

Argued June 18, 1996.—Opinion filed January 28, 1997.

COOK, J., dissenting.

Mike McElvain (argued), of Law Office of Mike McElvain, of Bloomington, for appellants.

John L. Morel (argued), of John L. Morel, P.C., of Bloomington, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the meaning of an exclusionary provision of a homeowner's insurance policy issued by plaintiff Country Mutual Insurance Company (Country Mutual) to defendants Matthew and Sarah Augsburger. That provision stated:

"Liability, Coverage A, does not apply to:

\* \* \*

5. **bodily injury** to **you** and, if residents of **your** household, **your** relatives, and individuals under 21 in the care of the preceding persons[.]" (Emphasis in original.)

The principal question presented is whether a very young foster child placed in the home of the Augsburgers was a "resident of [their] household" within the meaning of that exclusionary provision. If so, Country Mutual had no responsibility under that policy to defend or indemnify the Augsburgers in a suit brought against them by defendant Peoples Bank (Bank) as special administrator for the estate of that child charging the Augsburgers with negligence in the supervision and monitoring of the child and seeking damages for injuries to and the death of that child. We hold that the child was a resident of the Augsburgers' household and Country Mutual had no obligation of coverage concerning the suit.

On February 8, 1995, Country Mutual filed a complaint in the circuit court of McLean County seeking a declaratory judgment that it had no duty of coverage under the foregoing policy in regard to the suit filed on behalf of the deceased child's estate. In addition to the Augsburgers and the Bank, Youth Services of Mid-Illinois, a corporation (Youth Services), was named a defendant. Youth Services had placed the child with the Augsburgers pursuant to a written foster parent agreement and the child died while in their home and under their care. Both sides requested summary judgment. On December 11, 1995, the circuit court entered summary judgment granting Country Mutual the declaration it sought. The Augsburgers have appealed. We affirm.

Under section 2—1005(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2—1005(c) (West 1994)), summary judgments should be

granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The ruling of the circuit court granting the summary judgment was a determination of law concerning the interpretation of an insurance policy. We must review that determination *de novo*, giving no deference to the ruling of the circuit court. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

■ An insurance policy is a contract, subject to the standard rules of construction. *Western States Insurance Co. v. Bobo*, 268 Ill. App. 3d 513, 515, 644 N.E.2d 486, 488 (1994). As the Augsburgers point out, if any exclusionary provision of such a contract is ambiguous, rules of construction may be applied and the provision should be strictly construed against the insurer. *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 495, 475 N.E.2d 872, 876 (1985). The Augsburgers maintain in particular that the decision of the second district in *Country Mutual Insurance Co. v. Watson*, 1 Ill. App. 3d 667, 274 N.E.2d 136 (1971), requires that we interpret the instant exclusionary clause in such a way that the decedent child be determined not to have been a resident of their household.

In *Watson*, the appellate court affirmed a decision of the circuit court finding that a foster child placed by the Illinois Department of Children and Family Services (DCFS) with a farm family was not a resident of that household under a policy that did "not cover injuries incurred by the insured, his spouse, or 'residents of his household.'" *Watson*, 1 Ill. App. 3d at 669, 274 N.E.2d at 138. In concluding that, under the facts there, the child's presence was too temporary to constitute residence, the court stated:

> "In the instant case, testimony given by a social worker for the Department indicates it was never intended that any child placed in the defendant's home would remain there permanently. The home was merely a 'temporary care facility' used until permanent placement of a child could be made. It was stressed to the children that they would be moved from the home. Further testimony was given by the regional director of the Department who characterized the foster home operated by the defendant as a 'diagnostic center' where the children were placed for a[n] indeterminate period of time up to five months under the custodial agreement.
>
> The testimony clearly indicates that the stay of the boy would be of a temporary nature and the critical element of intention to make the home his permanent abode was lacking. Therefore, it cannot be said that he became a 'resident of the household.'" *Watson*, 1 Ill. App. 3d at 670, 274 N.E.2d at 138.

Here, the minor child was placed by Youth Services with the Augsburgers in June 1992 for one year under a written agreement, and that agreement was renewed for another year shortly before the child's death. Either party could terminate the agreement on 30 days' written notice or immediately for default by the other party. Neither had done so. Nothing in the record indicated that the Augsburgers' home was to be a "diagnostic center," nor was any evidence introduced that anybody had been notified that the child was likely to be moved.

The *Watson* court did not describe the word "residence" as being ambiguous. Rather, it described it as having "no fixed, exact meaning in the law, but [varying] with context and subject matter" and cited *Hughes v. Illinois Public Aid Comm'n*, 2 Ill. 2d 374, 380, 118 N.E.2d 14, 17 (1954). *Watson*, 1 Ill. App. 3d at 669, 274 N.E.2d at 138. In *Coriasco v. Hutchcraft*, 245 Ill. App. 3d 969, 971, 615 N.E.2d 64, 65 (1993), in holding that a minor child who made weekly overnight visits to the home of her noncustodial father was a resident of his home within the meaning of an uninsured motorist policy, the fifth district stated that the phrase "resident of the household" was not ambiguous and that the reasonable interpretation of it "requires an analysis of intent, physical presence, and permanency of abode in each case."

In *A.G. v. Travelers Insurance Co.*, 112 Wis. 2d 18, 331 N.W.2d 643 (1983), a court ward was placed in a foster home for a period of one year. That court held, as a matter of law, that the child was a resident of the foster family household and thus the homeowner's policy excluded liability coverage of an injury inflicted upon the foster child by a natural child of the foster parents. The court noted that (1) the foster parents are to give the child the love given their natural children; (2) the primary reason behind an exclusionary clause for residents is the possible lack of cooperation on the part of the insureds when they have affection for the person seeking damages for a tort against an insured; and (3) public policy would not be served by treating the foster child as a nonresident and therefore not covered by a policy that would defend and indemnify him from suit by a third party. *A.G.*, 112 Wis. 2d at 26, 331 N.W.2d at 647.

The *A.G.* court also explained that "[a]lthough the intended duration of the relationship [between foster parents and child] is a necessary element in deciding whether a person is a resident of a household, a showing of permanency is not required" but that the stay of the person must be more than "a mere temporary sojourn." *A.G.*, 112 Wis. 2d at 21, 331 N.W.2d at 645. The placement there was made by a court for a term of one year but could be changed by

agreement of the parties with court approval. Thus, permanency of the placement of the ward there was very similar to that here.

■ The reasoning of *Hughes, Coriasco,* and *A.G.* tends to explain why a leading treatise on insurance has stated that the term "resident" is broadly construed in insurance policies. 11 Couch on Insurance § 44:254, at 399 (2d rev. ed. 1982). We recognize the policy of construing insurance policies against insurers in general and against exclusionary clauses in particular. However, those rules are ordinarily prefaced by the condition that an ambiguity exists in the words to be interpreted. *Brochu,* 105 Ill. 2d at 495, 475 N.E.2d at 876; *State Farm Fire & Casualty Co. v. Guccione,* 171 Ill. App. 3d 404, 406, 525 N.E.2d 595, 596 (1988). Here, the foregoing cases seem to hold that the words "resident" and "residence" are not ambiguous but are to be interpreted according to the factors listed in those cases.

In holding that foster parents do not have standing to object to adoption of their foster children, this court has recognized that the relationship between a foster child and his or her foster parent is not permanent. See *Johnson v. Burnett,* 182 Ill. App. 3d 574, 582, 538 N.E.2d 892, 897 (1989). Nothing in that holding prevents a foster child from becoming a resident of the household of a foster parent if the length of the placement is sufficient and the other factors in the cited cases are met. The length of the child's intended stay with the Augsburgers was much longer than that in *Watson,* somewhat longer than in *A.G.,* and much more steady than that in *Coriasco.*

In considering the intent of the Augsburgers' policy, significance must be given to the definition of who are insureds, which states as follows:

> "Insured means you and the following residents of your household:
> 1. your relatives; and
> 2. persons under 21 in the care of those named above."

Thus, if the deceased child was a "resident" within the meaning of the policy, she would have been entitled to various benefits. The parties have not suggested that the child could be a "resident" of the household in order to be considered an insured but not a resident as to the exclusionary clause. The *A.G.* court reasoned that a similar provision, in defining who was insured, indicated an intention that the minor foster child be considered as a resident both in regard to being an insured and being subject to the liability exclusion provision.

A stronger factor in deeming that the intent of the policy was to consider a foster child in the situation of the decedent here as a "resident of the household" is the fact that few *unrelated* children, who

are not subject to possible removal, stay with foster parents over extended periods. Thus, if only long-term foster children were intended to be described in the definition provision and the exclusionary provision, the designations would have little meaning.

■ Our decision here is consistent with legislation enacted fairly recently in regard to insurance coverage for foster children. Public Act 86—1482, effective January 14, 1991, has two provisions that are relevant here. See Pub. Act 86—1482, eff. January 14, 1991 (1990 Ill. Laws 4064). One provision, which appears in section 155.30 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155.30 (West 1994)), states that (1) for purposes of determining insurance rates in regard to a child placed in a household by DCFS or a private child welfare agency, a foster child shall not be treated "differently from a natural or adopted child of the policy owner" and "acceptance of the placement of a foster child in [an insured] household" shall not be considered "as a use of the family dwelling for a business purpose." See Pub. Act 86—1482, § 4, eff. January 14, 1991 (1990 Ill. Laws 4064, 4078). The other provision is in section 5(s) of the Children and Family Services Act (Act) (20 ILCS 505/5(s) (West 1994)). It states that DCFS may provide a program to reimburse foster parents, under placement agreements such as that here, for "damages sustained by [them] as a result of the malicious or negligent acts of foster children" as well as providing third-party coverage for such foster parents with regard to actions of foster children to other individuals. 20 ILCS 505/5(s) (West 1994); see also Pub. Act 86—1482, § 1, eff. January 14, 1991 (1990 Ill. Laws 4064, 4071).

Notably, section 155.30 of the Insurance Code prevents insurers from charging a higher premium because the covered children are foster children than if the children were natural or adopted children. 215 ILCS 5/155.30 (West 1994). The exposure of foster parents to suits by foster children in regard to the supervision and care given to the foster children would appear to be greater than the exposure to suits brought by natural or adopted children, because in the latter case natural and adoptive parents are still protected by parent-child immunity. See *Cates v. Cates*, 156 Ill. 2d 76, 619 N.E.2d 715 (1993). If foster parents have such immunity, the Bank has no case here. In any event, the General Assembly did not prohibit an insurer from excluding coverage of parents for liability to either natural, adopted, or foster children.

In *Watson*, the court not only held that the exclusionary provision there did not defeat coverage for an insured for a suit by the foster child, the court also held that although the foster parents were receiving pay for caring for the child, this did not constitute opera-

tion of a business in the home. Another exclusionary provision would have prevented coverage if that were so. The General Assembly codified that portion of the *Watson* holding but did not codify or otherwise deal with the exclusionary provision in regard to coverage for liability of the foster parent to foster children. Our decision treats the foster children the same as natural or adopted children.

The Augsburgers also make some contention that the exclusionary provision does not apply to injuries to the deceased minor because the reference in the exclusionary clause to "individuals under 21 in the care of the preceding persons" refers only to relatives residing with the policyholder as "preceding persons" and not to the policyholder, *i.e.*, the person designated as "you." Such an interpretation does not make sense. An insurer would be unlikely to exclude liability coverage for suits by a foster child of a relative of the policyholder residing in the household but not exclude liability coverage for suits brought by a foster child of the policyholder. Such an interpretation would also be at odds with the format of the definition of who are "insureds" where the language makes clear that "persons under 21" who are residents of the household are "insureds" regardless of whether they are under the care of the policyholder or a relative of the policyholder.

The Augsburgers originally maintained that the "last antecedent clause rule" set forth in *Illini Federal Savings & Loan Ass'n v. Elsah Hills Corp.*, 112 Ill. App. 3d 356, 359, 445 N.E.2d 1193, 1196 (1983), required an interpretation of the exclusionary provision that "individuals under 21 in the care of the preceding persons" applies only to those in care of relatives of the person referred to as "you." That rule speaks of confining a qualifying phrase to its last antecedent. No operation of that rule can limit reference to "individuals under 21 in the care of the preceding persons" to those in the care of relatives. The Augsburgers conceded this at oral argument.

As we have indicated, we affirm.

Affirmed.

KNECHT, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse the decision of the trial court. In 1971, in *Watson*, the second district held that a foster child was not excluded under a provision that excluded injuries incurred by the insured, his spouse, or "residents of his household." *Watson*, 1 Ill. App. 3d at 669, 274 N.E.2d at 138. I would follow *Watson*.

*Watson* involved a farm owner's policy, similar to the homeowner's policy now before us. *Watson* held that whether a person was a resident in a household required a showing of more than physical presence; it required a showing of intention and permanency of abode and that, in the case before it, "the critical element of intention to make the home [the foster child's] permanent abode was lacking." *Watson,* 1 Ill. App. 3d at 670, 274 N.E.2d at 138. The *Watson* court stated:

> "[T]estimony given by a social worker for the Department indicates it was never intended that any child placed in the defendant's home would remain there permanently. The home was merely a 'temporary care facility' used until permanent placement of a child could be made. It was stressed to the children that they would be moved from the home." *Watson,* 1 Ill. App. 3d at 670, 274 N.E.2d at 138.

That same testimony would apply to the foster child in the present case, and to every foster child in the State of Illinois. A foster parent is only "a temporary way station on the road of a child's life until the difficulties at home can be straightened out." *Johnson v. Burnett,* 182 Ill. App. 3d 574, 582, 538 N.E.2d 892, 897 (1989). In other states foster children may be viewed more like adopted children. See *A.G.,* 112 Wis. 2d at 26-27, 331 N.W.2d at 647-48. There was testimony that the *Watson* foster home was a "diagnostic center," but there is no indication that fact was crucial on "the critical element of intention to make the home [the foster child's] permanent abode." *Watson,* 1 Ill. App. 3d at 670, 274 N.E.2d at 138.

*Watson* is consistent with the justification given for household exclusion clauses in liability policies—that such clauses protect the insurer from fraudulent or collusive lawsuits between members of the same family. *Meyer v. State Farm Mutual Auto Insurance Co.,* 689 P.2d 585, 591 (Colo. 1984); Annotation, *Validity, Under Insurance Statutes, of Coverage Exclusion for Injury to or Death of Insured's Family or Household Members,* 52 A.L.R.4th 18 (1987); *cf. Prudential Property & Casualty Insurance Co. v. Scott,* 161 Ill. App. 3d 372, 379, 514 N.E.2d 595, 599 (1987) (purpose to exclude those most likely to make a claim (a very questionable purpose)). Just as the insured may not recover from himself under his own liability policy, his child may also not recover. Collusion is not the same threat with foster children as it is with natural children. A foster child has independence from the insured foster parent. A foster child is a ward of the court, and the insured foster parent will not profit from any recovery by the child. Our interpretation of an exclusion should not be broader than the reason for the existence of that exclusion. Where there is inde-

pendence between the plaintiff and defendant, where there is some adversity of interest, it is not necessary to exclude household members from recovery. See 215 ILCS 5/143.01(a) (West 1994) (family exclusion void in vehicle insurance policies where third party contribution action involved).

The majority opinion notes that if an insurance policy is ambiguous, rules of construction are applied and the policy language should be strictly construed against the insurer. To avoid that result, the majority opinion holds that the phrase "resident of the household" is not ambiguous, citing *Coriasco* (245 Ill. App. 3d at 971, 615 N.E.2d at 65), a case that did not involve a foster child. I have no desire to strictly construe this policy against the insurer, but I disagree we may decide this case without giving some thought to the policy language. "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425, 62 L. Ed. 372, 376, 38 S. Ct. 158, 159 (1918) (opinion by Justice Holmes). *Coriasco* stretched the meaning of the word "resident" in order to find that the individual was an insured for purposes of underinsured motorists coverage. I question whether that was appropriate in that case, and doubt whether the *Coriasco* court would engage in a similar stretch in order to find that an *exclusion* applied, as in our case. See *Lubeznik v. HealthChicago, Inc.*, 268 Ill. App. 3d 953, 957-58, 644 N.E.2d 777, 780 (1994) (coverage provisions interpreted broadly, exclusionary provisions interpreted narrowly).

It is significant that this policy used the words "resident of your household." The policy did not simply refer to those "living" in the household. *Cf. Allstate Insurance Co. v. Stewart*, 158 Ill. App. 3d 129, 511 N.E.2d 188 (1987) ("temporarily living"). The policy in the present case did not say that those who had lived in the household for a month, or for a year, were excluded. The policy instead used the term "resident," and, as the court held in *Watson*, to be a resident of a household there must be some permanency of abode. What is important is not length of stay but the nature of the relationship with the others who live in the household. Foster children are not the same as natural children, or adopted children, or even *de facto* adopted children.

The majority opinion questions who the household exclusion could refer to if it does not refer to foster children. The exclusion would appear to refer to persons who are very much like natural children, but are unrelated. For example, if a husband is the insured, and his wife has a child by another marriage, that child is not re-

lated to the husband but is still excluded. For another example, if a husband and wife have raised an unrelated child as their own, but there has been no formal adoption, the exclusion applies.

The majority opinion points out that the language of the household exclusion generally tracks the definition of who is an insured, and if the deceased child were not a resident of the household, she would not be an insured and, accordingly, would not "have been entitled to various benefits" (286 Ill. App. 3d at 360, citing *A.G.*, 112 Wis. 2d 18, 331 N.W.2d 643). I reject the proposition that it was more important for the three-year-old child in this case to have liability insurance covering her tortious acts than it was for her to be compensated for injuries caused by the tortious acts of her foster parents. I also question what benefits incur to the foster parents (the foster child is judgment proof) if the foster child is an insured under the liability provisions of a homeowner's policy. The foster parents are themselves insureds, and they have coverage if they are legally obligated. The foster parents and their children cannot recover under their homeowner's coverage for torts committed against them by foster children or anyone else. If the foster child is an insured, there can be no recovery by anyone for bodily injury or property damage "caused intentionally by or at the direction of" the foster child.

In a number of cases involving day-care centers and babysitters, the question has arisen whether another exclusion, the exclusion for injuries "arising from an insured's business pursuits," applies. That exclusion was argued to apply in *Watson*, but the business pursuits exclusion in a farm owner's liability policy is generally defined to mean an activity other than farming. See 43 Am. Jur. 2d *Insurance* § 727 (1982). The child in *Watson* was injured with a knife when he cut a string on a bale of hay. The *Watson* court held that the insured farmer was in the course of his nonbusiness pursuit of farming when the accident occurred. *Watson*, 1 Ill. App. 3d at 669, 274 N.E.2d at 138. That holding is not available for foster parents who are not farmers, however, and in 1991 the legislature enacted section 155.30 of the Insurance Code, which provided that taking care of foster children shall not be considered "as a use of the family dwelling for a business purpose." 215 ILCS 5/155.30 (West 1994); Pub. Act 86— 1482, § 1, eff. January 14, 1991 (1990 Ill. Laws 4064, 4071).

The majority opinion states that section 155.30 of the Insurance Code only codified the *Watson* holding on the business pursuit exclusion, but that is inaccurate. *Watson* did not hold that receiving pay for the care of a child "did not constitute operation of a business in the home"; instead *Watson* held the activity involved fit within the

category of farming, for which there was coverage. The majority opinion points out the legislature, when it adopted section 155.30, did not adopt language nullifying the household exclusion, but it did not have to. *Watson* had already held that a foster child is not a "resident of the household" and therefore not subject to the exclusion. The legislature clearly intended to protect foster children and foster parents by enacting section 155.30. The legislature did not enact section 155.30 because it was concerned which exclusion should be used to deny recovery to foster children. The legislature enacted section 155.30 to make sure that injuries to foster children would not be excluded at all under homeowners' policies.