A.G., infant, a minor by his Guardian ad Litem, Jill Waite, Plaintiff,

v.

TRAVELERS INSURANCE COMPANY, Walworth County, Walworth County Department of Social Services, Central Baptist Children's Home, State of Wisconsin, and Wisconsin Department of Health & Social Services, Defendants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent,

Judy DELANEY, and Steven Delaney, Defendants-Appellants.

Court of Appeals

*No. 82–773. Submitted on briefs December 7, 1982.—
Decided February 22, 1983.*
(Also reported in 331 N.W.2d 643.)

For the defendants-appellants the cause was submitted on the brief of *Thomas J. Arenz* and *Dennis M. Grzezinski* of *Frisch, Dudek and Slattery, Ltd.* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Robert G. Krohn* of *O'Leary & Krohn* of Janesville.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. The broader issue in this case is whether a foster child placed in a foster home is a "resident" of that household for insurance purposes. We decide that the child can be so delineated, but it often depends on the circumstances of each case. Here, we affirm summary judgment because, under the facts of this case, the foster child was a resident of the household as a matter of law.[1]

Before reciting the facts, some overview of pertinent case law is warranted. Homeowner's insurance policies often cover liability for injury to third persons. These same policies frequently exclude coverage for liability to "residents" of the household. 12 COUCH ON INSURANCE 2d § 44A:92 (rev. ed. 1981). The purpose has been explained so "as 'to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury.'" *National Farmers Union Property & Casualty Co. v. Maca,* 26 Wis. 2d 399, 405, 132 N.W.2d 517, 520

---

[1] The original caption included the juvenile's full name. Even though this is technically a personal injury action rather than a juvenile or termination of parental rights case under ch. 48, Stats., confidentiality should still be preserved. The action arose after a ch. 48 disposition, and the reason for confidentiality has not dissipated simply because an unfortunate accident occurred while the disposition was in force. We realize that the parties filing the briefs would understandably feel uncomfortable altering trial court captions and documents. We, therefore, undertake that duty ourselves.

(1965). Thus, the exclusion protects insurers from situations where an insured might not completely cooperate and assist an insurance company's administration of the case.

"Residents of a household"[2] is a phrase designative of a relationship where persons live together as a family and deal with each other in a close, intimate and informal relationship and not at arm's length. *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis. 2d 27, 33, 197 N.W.2d 783, 787 (1972). Although the intended duration of the relationship is a necessary element in deciding whether a person is a resident of a household, a showing of permanency is not required. Still, something more is required than a mere temporary sojourn. *Id.* at 34–35, 197 N.W.2d at 787–88. The subjective or declared intent of the individual, while a fact to be considered, is not controlling in determining whether there is an intended duration sufficient to make the individual a "resident of the household." Rather, a thorough examination of all the relevant facts and circumstances surrounding the relationship is necessary. *Id.*

A determination as to whether a person is a resident or member of the household is dependent upon three factors: (1) living under the same roof; (2) in a close, intimate and informal relationship, and (3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon. *National Farmers Union Property & Casualty Co.*, 26 Wis. 2d at 406, 132 N.W.2d

---

[2] In some insurance policies, the phrase is designated "members of a household" rather than "residents of a household."

at 520–21. Persons unrelated by blood, marriage or adoption who are living together under the same roof can be considered "residents" of the same household for policy exclusion purposes. *Quinlan v. Coombs,* 105 Wis. 2d 330, 333, 314 N.W.2d 125, 127 (Ct. App. 1981).

In this case, American Family Mutual Insurance Company issued a homeowner's policy to Judy Delaney. Mrs. Delaney, at all times pertinent to the facts of this case, was a licensed foster care mother. Her home had been licensed as a foster home for approximately four and one-half years. She was also a fulltime teacher for emotionally disturbed children in the Elkhorn area school district. Initially, on becoming a foster parent, Mrs. Delaney was concerned about her homeowner's and auto insurance coverage in the event a foster child, placed in her home, committed a tortious act toward a third party. She was assured by her auto insurer that, in such circumstances, the insurer would consider the foster child to be like her own children, and she would be covered.

A.G., the plaintiff, was a foster child under the care of Mrs. Delaney. Prior to placement, he attended Elkhorn area high school, even though he lived in East Troy, because he was placed in Mrs. Delaney's emotional disabilities program. So, Mrs. Delaney knew A.G. for about a year prior to placement. Prior to placement, A.G. had basically been living in the streets. He was placed in the Delaney home as a result of some unruly behavior in the town and a lack of family stability with his divorced parents.

Occupancy in the Delaney home began as a result of a temporary order for nonsecure physical custody commonly known as "emergency placement." This occurred on September 17, 1980. On September 23, in a court disposition order, an out-of-home placement was made to the Delaney home so that the placement was no longer

considered temporary.[3] The order was for one year as provided by sec. 48.34, Stats.[4] This order could be changed by any of the parties subject to the approval of the judge.

In a deposition, A.G. said he understood he was moving into the Delaney home for an extensive period of time. He said that, while there, he was treated like one of the family. He had duties in the house, such as washing clothes, doing the dishes and sweeping the floors. He had full use of the house including access to the refrigerator. He stated that Steven Delaney, Mrs. Delaney's natural son, treated him like a brother. He was happy with his placement in the home and was happy with the love and affection Mrs. Delaney showed for him. Mrs. Delaney, in turn, felt close to A.G. She acknowledged that it was a fairly harmonious group she had under the roof. She said she "really cared about this kid." In fact, A.G. transferred back to Mrs. Delaney's school just to be in her class. It was her goal to treat A.G. like her natural children and give him the same kind of attention and affection that she gave to

---

[3] Appellant considers the one year placement a "temporary" placement. We disagree with her definition. While not permanent, such as adoption, it is more than temporary as the body of this opinion suggests.

[4] Section 48.34, Stats., states as follows:

48.34 Disposition of child adjudged delinquent. If the judge adjudges a child delinquent, he or she shall enter an order deciding one or more of the dispositions of the case as provided in this section under a care and treatment plan, except that subs (4m) and (8) shall be exclusive dispositions:

. . . .

(3) Designate one of the following as the placement for the child:

. . . .

(c) A foster home licensed under s. 48.62 or a group home licensed under s. 48.625.

her own. She expected the placement to continue for one year.

On October 19, A.G. was allegedly struck by an air-gun pellet negligently discharged by Steven Delaney. By January of 1981, Mrs. Delaney asked for and received an end to the placement because A.G. was demanding certain privileges, threatening to sue Mrs. Delaney if she did not comply.

A.G., by his guardian ad litem, eventually brought suit against the Walworth County Department of Social Services as a result of his injury. He also sued Judy Delaney, her son Steven, and Mrs. Delaney's homeowner's insurance company, American Family Mutual Insurance Company, among others.

American Family moved for summary judgment on grounds that A.G. was a resident of Mrs. Delaney's household, and, therefore, the "resident of the household" exclusion was applicable. The motion was opposed by Mrs. Delaney. The trial court granted summary judgment, and Mrs. Delaney appeals.

■

We hold that, as a matter of law, in a court dispositional order of one year under sec. 48.34, Stats., to a family operated foster home of the type envisioned in sec. 48.62, Stats., the foster child shall be considered a resident of the household for insurance purposes.

We do so for three reasons. First, there is prior authority for it. In *Goller v. White*, 20 Wis. 2d 402, 122 N.W.2d 193 (1963), a foster child was placed in the insured's licensed foster home, which was a farm. He was then injured in a farm accident. Our supreme court held that the boy was a "member of the family" within the definition of "insured" in the farmer's liability and medical policy. Therefore, the policy afforded no coverage.

The facts in *Goller* are fairly similar to the case here. The boy was close to twelve years old. He had been placed in the White home as a foster child. The home was a licensed foster home. The supreme court quoted, with approval, from the trial court's memorandum opinion. Portions of it bear repeating.

Under these facts . . . the plaintiff was a member of the family . . . within the meaning of the policy . . . . The very purpose in licensing a foster home and placing a child therein is to supply the parental and family relationship to a dependent, neglected or delinquent child. It is not necessary that one be a blood relative in order to be a member of the family. . . .
   In *Utah Fuel Co. v. Industrial Commission of Utah*, [1937], 91 Utah 491, 64 P.2d 1287, the Utah court held, under terms of the Compensation Act dealing with dependency on deceased employee, that the term "member of the family," means one whom the head of the family has taken into his home, to live with him, to share such comforts as the home may afford, and toward whom the head has assumed an attitude of parent, guardian or caretaker, to whom he owes the obligation of assistance, maintenance, and support. [Citations omitted.]

*Goller*, 20 Wis. 2d at 408–09, 122 N.W.2d at 195–96. We acknowledge that the juvenile code has been vigorously changed since *Goller*. For instance, legal custody is no longer delegated by a welfare department to a family foster home; only physical custody is delegated. Yet, the trial judge's words of over twenty years ago still hold true for the family operated foster home of today. We hasten to add that we expressly are not deciding whether foster homes owned by the state or a county agency fall within the ambit of this case; nor are we deciding whether group homes are of the same genre. Finally, we do not consider "emergency placements" to be in the same category as a placement in a family operated foster home for a period of one year.

Certainly, however, we are satisfied that the purpose of this type of foster relationship is to provide concern and love for the children placed in the home. The foster parent, in a family operated foster home, steps into the shoes of the natural parents and attempts to meet the physical and emotional needs of the child. The foster parent is expected to provide the kind of emotional support, love and affection that a natural parent would be expected to provide.

Second, the holding comports with the intended purpose of the "resident of a household" exclusion. Since the intention of the family operated foster home relationship is to develop a close, informal and substantial relationship, it would be reasonable to conclude that the foster parents would consider this relationship in contracting about insurance—indeed, it was done in this case. It would also be reasonable to conclude that if we were to hold otherwise, and if a foster child were to sue the foster parent, the potential for lack of cooperation and assistance on the part of the foster parent to the insurer would be strong.

Third, it is in the best interests of both the insurance industry and the insured to have some finality on the question of whether a foster child in a family operated foster home is a resident of the household. This case should make it extremely difficult for an insurance company to avoid defending the insured, if a foster child commits a tortious act upon a third party, on grounds that the child was not a resident of the household under standard policy provisions. The case becomes a two-edged sword; and neither the insurance companies nor the insureds should be able to fence with both sides of it.

In fact, there is a statute which suggests that the legislature contemplated the foster child was to be considered a member of the family for insurance purposes. Section 48.627, Stats., mandates that the Wisconsin De-

partment of Social Services shall purchase insurance for foster parents "to cover the liability of the foster parents, *to the extent not provided in the foster parent's homeowner's insurance policy,* for injuries sustained or property damage caused by foster children in the foster parent's care, . . . ." (Emphasis added.) The statute demonstrates that a foster child will be considered an insured, and insurance would be afforded if the foster child caused injury by a negligent act. To the monetary extent not covered, the department would so cover.

We are aware that the subjective intent of the parties is normally a fact to be considered. We do not perceive this to be an impediment to our holding. If we were to canvass every fact situation involving family operated foster homes, it would be too easy to cast doubt on the effectiveness of a particular foster home arrangement. Even in cases where the court order contemplated a one year commitment, either the insurer or the insured could possibly present evidence to support an inference that the arrangement was lacking in the necessary closeness and was likely to fail, thus becoming but a temporary sojourn. The focus should not be on the particular home situation, however, but on *all* the relevant facts and circumstances. Foster parents agree to work toward a substantial degree of stability in the child's environment. To allow each case to be reviewed on the basis of how close the relationship has been would lose sight of the very purpose of a family foster home relationship—to provide a close, intimate and informal bond between child and foster parent. We decline to make gray what should be a bright line determining the obligations of both the foster parents and the insurer.

There may be cases in which it becomes a question of fact whether a foster child was a member of any other type of foster household. Those cases must be decided on a case-by-case basis. The *Goller* case, sec. 48.627, Stats., and commonsense policy considerations compel us to hold,

however, that a foster child in a family owned foster home under a one year dispositional order is a resident of the household as a matter of law.

*By the Court.*—Judgment affirmed.