75 P.3d 404 (2003)
134 N.M. 188
2003-NMCA-095
RISK MANAGEMENT DIVISION OF THE GENERAL SERVICES DEPARTMENT OF THE STATE of New Mexico ex rel. James APODACA and Kathy Apodaca, Plaintiff-Appellant,
v.
FARMERS INSURANCE COMPANY OF ARIZONA, Defendant-Appellee.
No. 22,161.
Court of Appeals of New Mexico.
May 30, 2003.
*405 Carol J. Ritchie, Felker, Ish, Ritchie & Geer, P.A., Santa Fe, NM, for Appellant.
Lawrence M. Glenn, Daniel J. O'Brien, Daniel J. O'Brien & Associates, P.C., Albuquerque, NM, for Appellee.

OPINION
CASTILLO, Judge.
{1} This case presents an issue of first impression: whether a foster child is a "resident" of the foster home for the purposes of the resident exclusion in a homeowner's insurance policy. The district court, determining that foster child Emeterio Garcia was a resident of the home of his foster parents, James and Kathy Apodaca (Apodacas), granted summary judgment to the insurance carrier, Farmers Insurance Company of Arizona (Farmers). We reverse the summary judgment and remand for further proceedings.

I. BACKGROUND
{2} The undisputed facts in the record are that: (1) on October 30, 1996, the Children, Youth and Families Department (CYFD), which had legal custody of two-year-old Emeterio, placed the child in the licensed foster home of the Apodacas for "long term" care with a plan to return Emeterio home to his parents; (2) the child died on May 13, 1997, by drowning in a hot tub at the foster home; (3) the Apodacas were named insureds under a homeowner's policy issued by Farmers; (4) the policy provides liability coverage for the Apodacas for certain damages they become legally liable to pay and excludes coverage for "bodily injury to any resident of the residence premises" or for injury resulting from home care services provided by the insured; and (5) as licensed foster parents, the Apodacas were "public employees" of the State of New Mexico. The Risk Management Division (RMD) extends insurance coverage under the Public Liability Fund for certain claims brought against public employees.
{3} On May 12, 1999, JoAnn Martinez (Martinez), Emeterio's grandmother, individually and as personal representative of Emeterio's estate, brought a wrongful death suit against the Apodacas, CYFD, and certain of CYFD's employees, alleging 42 U.S.C. § 1983 violations, negligence, and breach of fiduciary duty. Farmers and RMD disagree as to whether (1) Emeterio was a resident of the Apodacas' home, (2) Emeterio's death was excluded from coverage, and (3) Farmers or RMD has the duty to defend or indemnify the Apodacas for any judgment entered against them.
{4} On September 1, 1999, RMD brought a declaratory judgment action against Farmers and others, seeking a determination that Farmers is primarily liable for any liability of the Apodacas to Martinez and Emeterio's estate. Farmers moved for summary judgment on the grounds that resident and home care exclusions applied to this case. RMD opposed summary judgment arguing that the *406 circumstances of the case give rise to a factual dispute as to whether Emeterio was a resident and whether the home care services exclusion applies to foster care. Martinez also filed a memorandum in opposition to summary judgment, but was dismissed from the action by stipulation before the summary judgment hearing. Following a hearing on January 24, 2001, the district court granted summary judgment to Farmers concluding that Emeterio was a resident and that the resident exclusion applied to deny coverage for his death. The order did not address the home care exclusion.
{5} RMD argues on appeal that the district court's ruling on the resident exclusion was in error, and that it would be improper to grant summary judgment on the home care services exemption. Since the district court has not ruled on the home care services exclusion, we address only the resident exclusion on appeal. See In re Termination of Parental Rights Eventyr J., 120 N.M. 463, 471, 902 P.2d 1066, 1074 (Ct.App.1995) (declining to consider an issue that the district court had not considered in reaching its decision).

II. DISCUSSION

A. Standard of Review on Summary Judgment
{6} Summary judgment is proper when no issues exist as to any material fact and "only the legal effect of the undisputed facts remains to be decided." Ruiz v. Garcia, 115 N.M. 269, 272, 850 P.2d 972, 975 (1993); see Rule 1-056 NMRA 2003. "[S]ummary judgment is not appropriate when the facts before the court are insufficiently developed or where further factual resolution is essential for determination of the central legal issues involved." Brown v. Taylor, 120 N.M. 302, 307, 901 P.2d 720, 725 (1995) (internal quotation marks and citation omitted). We review de novo whether there are genuine issues of material fact justifying summary judgment. Self v. United Parcel Serv., Inc., 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

B. Contract Interpretation
{7} We must determine whether the district court had before it sufficiently developed facts to conclude as a matter of law that Emeterio was a resident of the Apodacas' home and that the resident exclusion applies. The relevant portions of the Apodacas' policy read as follows:
DEFINITIONS
. . . .
9. Insuredmeans you and the following persons if permanent residents of your household:
a. your relatives,
b. anyone under the age of 21.
. . . .
SECTION IILIABILITY
. . . .
We will pay those damages which an insured becomes legally obligated to pay because of bodily injury ... resulting from an occurrence to which this coverage applies.
. . . .
SECTION II EXCLUSIONS
. . . .
We do not cover:
. . . .
6. Bodily injury to any resident of the residence premises except a residence employee who is not covered under Workers' Compensation or Employers' Liability Coverage.
The policy does not define "resident."
{8} In interpreting the undefined "resident," the district court is guided by general principles of contract law. See Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 18, 123 N.M. 752, 945 P.2d 970 ("[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts.") (internal quotation marks and citations omitted). The district court must ultimately decide what coverage the parties agreed to under the policy. See Safeco Ins. Co. of Am., Inc. v. McKenna, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977) ("Under New Mexico law the obligation of a liability insuror *407 is contractual and is to be determined by the terms of the policy."). In doing so, the district court considers the policy as a whole. Knowles v. United Servs. Auto. Ass'n, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) ("An insurance contract should be construed as a complete and harmonious instrument designed to accomplish a reasonable end."). If a policy is clear and unambiguous, then the court does not construe the terms; it merely gives the terms their usual and ordinary meaning. W. Commerce Bank v. Reliance Ins. Co., 105 N.M. 346, 348, 732 P.2d 873, 875 (1987); Ivy Nelson Grain Co. v. Commercial Union Ins. Co., 80 N.M. 224, 226, 453 P.2d 587, 588 (1969). However, where meanings of terms are not obvious, or if the contract is "reasonably and fairly susceptible of different constructions," then it may be ambiguous. Allsup's Convenience Stores, Inc. v. N. River Ins. Co., 1999-NMSC-006, ¶27, 127 N.M. 1, 976 P.2d 1; Rummel, 1997-NMSC-041, ¶ 19, 123 N.M. 752, 945 P.2d 970. Even if an ambiguity is not apparent on its face, an ambiguity can arise when otherwise clear policy language "appears ambiguous upon application to a particular circumstance." Id. ¶ 48, 945 P.2d 970 (citation omitted).
{9} We find no New Mexico case law on whether an undefined "resident" in a household insurance policy is ambiguous language. Other jurisdictions considering the term "resident" in insurance policies arrive at differing conclusions. See, e.g., Farmers Ins. Co. v. Oliver, 154 Ariz. 174, 741 P.2d 307, 310-11 (Ct.App.1987) ("[u]nder Arizona law[,]... `resident of the same household' [in a homeowners insurance policy] on its face is not ambiguous") (citation omitted); Jenks v. State, 507 So.2d 877, 879 (La.Ct.App.1987) (finding "resident" in a homeowners policy unambiguous as applied but acknowledging that the term has been found to have many meanings and definitions and must be construed within the fact and circumstances of each case); Vanguard Ins. Co. v. Racine, 224 Mich.App. 229, 568 N.W.2d 156, 159 (1997) (concluding that the terms "residents" and "regularly resides" in a homeowners policy are susceptible to different meanings and are therefore ambiguous); Prudential Prop. & Cas. Ins. Co. v. LaMarr, 92 Ohio App.3d 331, 635 N.E.2d 63, 64-65 (1993) (disagreeing with trial court's conclusion that "resident of a household" in a homeowners policy was ambiguous); Farmers Mut. Ins. Co. v. Tucker, 213 W.Va. 16, 576 S.E.2d 261, 270 (2002) (finding the phrase "resident of your household" in a property insurance policy ambiguous); T.M. ex rel. Cox v. Executive Risk Indem., Inc., 59 P.3d 721, 728 (Wyo.2002) (reiterating that "resident" in a professional liability policy is subject to varying interpretations and so is ambiguous).
{10} We agree with other jurisdictions that have concluded the undefined term, "resident" or "residence" may be subject to various interpretations depending on the context of the case. "[R]esidence usu[ually] just means bodily presence as an inhabitant in a given place." BLACK'S LAW DICTIONARY 1310 (7th ed.1999). But the term can be also mean domicile, which may require presence and intent "to make the place one's home." Id.; see also Hagan v. Hardwick, 95 N.M. 517, 518, 624 P.2d 26, 27 (1981). Residency may require actual physical presence on a permanent basis, see Perez v. Health & Soc. Servs., 91 N.M. 334, 336, 573 P.2d 689, 691 (Ct.App.1977), or physical presence on a temporary basis with a primary residence elsewhere. See Racine, 568 N.W.2d at 159 (suggesting that "resident" may be interpreted "to include relatives who periodically stay in a home indefinitely, but maintain a legal domicile at some other location during the same period"). Without a definition in the insurance policy, differing and equally reasonable constructions of the term are possible, depending on the context. See Perez, 91 N.M. at 336, 573 P.2d at 691 ("The words `residence' and `resident' have no fixed meaning applicable to all cases, but are used in different and various senses, depending upon the subject-matter." (internal quotation marks and citation omitted)). Accordingly, we conclude that the term is ambiguous in this case and must be construed.
{11} When construing ambiguous contract language, the district court must "adopt the interpretation that is most in accord with reason and the probable expectations of the parties." Rummel, 1997-NMSC-041, *408 ¶ 22, 123 N.M. 752, 945 P.2d 970. At the same time, the contract is construed liberally in favor of the insured. Id. We note that exclusion clauses in insurance policies are to be narrowly construed. Knowles, 113 N.M. at 705, 832 P.2d at 396. The district court may use all available extrinsic evidence to interpret ambiguities, including "the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." Mark V, Inc. v. Mellekas, 114 N.M. 778, 782, 845 P.2d 1232, 1236 (1993), Rummel, 1997-NMSC-041, ¶21, 123 N.M. 752, 945 P.2d 970. Based on these principles of construction, we find that additional facts must be developed in the record before the district court may properly determine whether the contract does, indeed, exclude Emeterio from coverage as a resident of the Apodacas' home. We therefore reverse summary judgment. We take this opportunity to discuss what factors the district court must consider in deciding whether the term, "resident," applies to Emeterio. We remand for further consideration of the factors in accordance with this opinion. See Delgado v. Phelps Dodge Chino, Inc., 2001-NMSC-034, ¶ 32, 131 N.M. 272, 34 P.3d 1148 (remanding the case for the trial court to apply the newly announced test for determining the employer's wilful injury); Lamay v. Roswell Indep. Sch. Dist., 118 N.M. 518, 526, 882 P.2d 559, 567 (Ct.App.1994) (remanding the case for the parties to have the opportunity to argue the facts in light of the new test adopted by this Court in a workers' compensation question) (citations omitted).
{12} Before discussing the factors, however, we briefly address RMD's request that this Court adopt the same analysis of residency as used in the context of divorce proceedings, Hagan, 95 N.M. at 518, 624 P.2d at 27 or in the context of determining eligibility for public benefits, Perez, 91 N.M. at 336, 573 P.2d at 691. Although we find those cases somewhat helpful, they rely primarily on physical presence and intention to be a resident of a particular place. We believe that additional factors must be considered to determine whether a foster child is a resident of a foster home. We now discuss the factors.

C. Analysis

1. Factors-Other Jurisdictions
{13} New Mexico has not previously addressed the specific question of whether a foster child is a resident of a foster home under a homeowner's insurance policy and so we turn to other jurisdictions for guidance. Those courts which have addressed the issue have conducted a case-by-case analysis using a variety of factors that we find persuasive. See, e.g., Country Mut. Ins. Co. v. Peoples Bank, 286 Ill.App.3d 356, 221 Ill.Dec. 607, 675 N.E.2d 1031, 1033-34 (1997) (considering intent of the insurance policy and length of child's intended stay at the foster home); Jenks, 507 So.2d at 879 (considering intended duration, foster child/foster parent relationship, and insurance policy language); Mundell v. Nationwide Ins. Cos., 181 Misc.2d 475, 693 N.Y.S.2d 400, 402-03 (N.Y.Sup.Ct.1999) (considering intended duration of the relationship, Family Court records, pending placement hearing, and the public policy allowing exclusion); LaMarr, 635 N.E.2d at 65 (considering the plain meaning of word "resident," temporary nature of stay, and lack of set departure date from foster home); Merchants Mut. Ins. Co. v. Artis, 907 F.Supp. 886, 890 (E.D.Pa.1995) (considering ordinary meaning of "resident," length of stay in foster home, lack of plans to reunite the children with their natural parents, and treatment plans of state caseworkers); State Farm Fire & Cas. Co. v. Breazell, 324 S.C. 228, 478 S.E.2d 831, 832-33 (1996) (considering terms of insurance contract, terms of foster care contract, nature of foster care relationship where foster parents treated child as their own son, and length of anticipated stay); A.G. by Waite v. Travelers Ins. Co., 112 Wis.2d 18, 331 N.W.2d 643, 645 (Ct.App.1983) (holding that whether a person is a resident of a household depends on the following three factors, no one of which is controlling: "(1) living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider *409 the relationship in contracting about such matters as insurance or in their conduct in reliance thereon").
{14} These cases involve two basic inquiries: what was the intent of the parties to the insurance contract, and what was the nature of the child's stay in the foster home. Some jurisdictions also discuss the public policy behind allowing the resident exclusion to apply. See, e.g., A.G. by Waite, 331 N.W.2d at 646-47 (deciding that the policy behind allowing exclusion applied to a foster relationship where the foster child was treated like family, the placement was for one year, and the foster parents considered the relationship when obtaining the insurance policy); Mundell, 693 N.Y.S.2d at 403 (concluding that the public policy allowing exclusion should not apply where the foster parents had difficulties with the foster child's behavior during the child's six-week stay and continued placement with them was unclear).

2. New Mexico Test for Exclusion to Apply to the Foster Child
{15} We hold that to determine whether Emeterio was a resident under the Apodacas' homeowner's insurance policy, the district court should consider 1) the intent of the parties to the insurance contract and 2) the nature of the child's stay in the foster home. The public policy allowing the exclusion is inherent in evaluating the two factors. As we discussed above, in determining what coverage the parties intended, the district court first examines the language of the policy, construing it as a whole, and then may look to extrinsic evidence. Rummel, 1997-NMSC-041, ¶¶ 20-21, 123 N.M. 752, 945 P.2d 970; Mellekas, 114 N.M. at 782, 845 P.2d at 1236.
{16} We emphasize that an insurer cannot have it both ways. For example, if the foster child is not considered a resident for purposes of coverage for tortious acts on third parties, the child cannot, then, be considered a resident for purposes of the exclusion. See A.G. by Waite, 331 N.W.2d at 647 (stating that insurance companies should not be able to fence both sides); see also Fed. Ins. Co. v. Century Fed. Sav. & Loan Ass'n, 113 N.M. 162, 166 n. 3, 824 P.2d 302, 306 n. 3 (1992) (noting that where clauses in an insurance contract are inconsistent or contradictory, the clause which affords greater coverage for the insured will govern). Where an insuring clause and an exclusionary clause irreconcilably conflict, courts may refuse to enforce the exclusionary clause when it would have "deprive[d] the insured of the insurance coverage which the insured reasonably understood was afforded by the policy for which premiums were paid." Knowles, 113 N.M. at 707, 832 P.2d at 398 (internal quotation marks and citation omitted). We observe from the language in the Apodacas' policy that there may be a conflict between the clause requiring that the resident be "permanent" in order to be an insured and the exclusionary clause, which lacks the qualifier. The district court should consider evidence regarding the effect of the possible conflict if there would have been coverage for Emeterio as an insured.
{17} By nature of the child's stay, we mean both the State's objective intention for the child's stay and the subjective relationship between the child and foster parents. In determining the State's intent, the following should be considered: CYFD documentation concerning the designation of the child's placement prior to the injury, e.g., "emergency," or "long term"; any dates proposed for moving the child from the foster home prior to the injury; any pending assessments or other evaluations by CYFD that might bear on the child's continued placement in the foster home; any orders pending prior to the injury that might affect the child's placement; and the duration of the child's actual stay in the home. We decline to set any bright line test for how long the foster child must be in the home-either actual or intended length of stay-before the child becomes a resident. But see A.G. by Waite, 331 N.W.2d at 648 (holding that, as a matter of law, a foster child under a one-year dispositional order is a resident of the foster household).
{18} We emphasize that although actual or intended duration of the relationship is a factor, it is not determinative. Nor is a showing of permanency required. See id. at 645 (stating that while permanency is not required, something more than a mere *410 temporary sojourn is required for a person to be a resident). We therefore disagree with the arguments of both RMD and Farmers to the extent they claim that a certain duration and/or termination date for the foster care relationship is necessary for designation as a resident.
{19} In determining the nature of this foster child/foster parent relationship, the district court should consider whether the relationship was informal, close, and intimate, suggesting that the child may be a resident. See A.G. by Waite, 331 N.W.2d at 646 (determining that the foster child was a resident where, among other factors considered, the child was treated like one of the family, was shown love and affection by his foster family, and understood he was moving into the foster home for an extensive period (one year)); see also Breazell, 478 S.E.2d at 832 (holding that the district court properly concluded that the foster child was a resident of the foster home for insurance purposes where the material facts showed the foster parents, with whom the child lived for twenty months, exclusively provided for his needs and treated him as they would their own son, and where the foster care contract required the foster parents for an indefinite period of time to rear, support, care for, and provide the child with an opportunity for an adequate education); Couch 3d § 128:6 ("When used in the phrase, `resident of the insured household,' resident designates a relationship where persons live together as a family and deal with each other in a close, intimate, and informal relationship.").
{20} Public policy supports allowing the exclusion as a means to prevent collusion. For example, insurance contracts will often exclude from coverage liability for bodily injury to residents of the insured household in order to prevent collusion in the filing of insurance claims. 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 128:3 (1997) (hereinafter Couch 3d); A.G. by Waite, 331 N.W.2d at 644-45 (explaining the purpose is "to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury") (internal quotation marks and citation omitted). Thus, by evaluating the intent of the parties and the nature of the child's stay, the district court necessarily considers the public policy basis for the exclusion.

III. CONCLUSION
{21} Because additional facts must be developed to determine whether Emeterio was a resident of the Apodacas' home, we reverse summary judgment. We remand for further proceedings consistent with this opinion. Any additional relevant facts that are disputed must be resolved by a fact finder.
{22} IT IS SO ORDERED.
WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.