Certiorari Denied, May 17, 2017, No. S-1-SC-36432

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMCA-051

Filing Date: March 28, 2017

Docket No. 34,932

JENNY DOVE and DAVID TAPIA,

    Third-Party Plaintiffs-Appellants,

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

    Third-Party Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
David K. Thomson, District Judge

Bauman, Dow & Stambaugh, P.C.
Mark C. Dow
Deborah R. Stambaugh
Maria R. Osornio
Albuquerque, NM

for Appellants

Guebert Bruckner, P.C.
Terry R. Guebert
Lawrence A. Junker
Albuquerque, NM

for Appellee

OPINION

HANISEE, Judge.

{1}    At issue in this appeal is whether Defendant State Farm Fire and Casualty Company

1

breached its duty to defend when it refused Plaintiff Jenny Dove's request for legal representation in the underlying lawsuit brought by current co-Plaintiff David Tapia against her. Because the facts tended to show that Dove was arguably covered by the policy, which is the established legal standard in New Mexico, we hold that Defendant breached its duty to defend. The district court having concluded otherwise, we reverse.

**BACKGROUND**

{2}     The following facts underpin the civil action (the primary action) brought by Tapia against Dove: On August 24, 2007, Tapia, a Public Service Company of New Mexico employee, was reading the electrical meter at a residential property in Santa Fe, New Mexico when he was injured by Dove's 150-pound Bullmastiff dog. Dove had been renting the back dwelling unit at the property from Betsy Joyce, the owner, since March 7, 2007. The property consisted of two rental units: a front main house and Dove's studio unit in back, each with its own private yard separated by a fence. There was also a common yard in the front part of the property that contained large trees and planting beds.

{3}     Joyce, who lives in California, utilized the services of several third parties to manage and maintain the property in her absence. Gay Nathan—a long-time Santa Fe resident and retired high school English teacher who had many rental properties of her own—was primarily responsible for screening and selecting tenants and collecting rent, activities for which Joyce compensated her. Nathan also provided Joyce and Joyce's tenants with a list of various service providers, such as plumbers, electricians, and exterminators. Nathan was not responsible for either coordinating or making repairs at Joyce's property and did not pay service bills on Joyce's behalf. Nathan also had no involvement in gardening or maintaining the landscaping at the property. Joyce hired a gardener to maintain the common yard, including weeding and watering.

{4}     Tenants were responsible for maintaining the private yard associated with their respective dwelling unit. Tenants were also free to use the common yard, including tending to the garden and eating the raspberries and apricots that grew there. Dove knew that she was allowed to use the common yard but spent little, if any, time there out of respect for the privacy of the main house tenants, whose windows faced the common yard.

{5}     In the summer of 2007, during one of Joyce's visits to the property, which occurred two times per year, Joyce noticed that one of the trees in the common yard was not getting enough water. Joyce asked Dove to water the tree and "make sure things stayed alive[.]" While Joyce's primary request was that Dove water the tree, Dove was also asked to tend to "all the flower beds around" the common yard. Joyce may have also asked the tenant in the main house to water the common yard, though Dove believed "[t]hey had some kind of agreement where maybe he was doing more maintenance like cleaning . . . the yard and things like that." Neither Dove nor the other tenant received payment or a rent reduction for the work they did in the common yard. At the time that Tapia was injured by Dove's Bullmastiff on August 24, 2007, Dove was in the common yard watering plants per Joyce's

request.

**{6}**     In April 2010 Tapia sued Joyce[1] and Dove, alleging negligence, negligence per se, and premises liability, and seeking to recover damages for the injuries he sustained from Dove's Bullmastiff. Joyce had a rental dwelling insurance policy with Defendant (the policy) that covered the property, and Defendant tendered a defense to Joyce in the primary action because she was the named insured under the policy. Joyce was granted summary judgment in April 2012. Dove—who was not served with Tapia's complaint until March 2011—filed a pro se answer and motion to dismiss on April 6, 2011. In a letter to Defendant dated April 28, 2011, Dove requested that Defendant tender her a defense. On May 9, 2011, Defendant responded and denied Dove's request because she was not the named insured and did not "qualify as an insured by definition under the [r]ental [d]welling [p]olicy owned by . . . Joyce."

**{7}**     Tapia and Dove eventually entered into a settlement agreement on May 7, 2012. Under its terms, Tapia's damages were determined to be $107,056.03, and Dove agreed to assign Tapia "all rights, claims and causes of action, together with the proceeds therefrom which [Dove] has against [Defendant] for its failure to defend and/or indemnify . . . Dove" in the primary action. Dove executed the assignment concurrently with the settlement agreement.

**{8}**     On November 9, 2012, Dove and Tapia filed their third-party complaint against Defendant, seeking a declaratory judgment that Defendant breached its duty to defend Dove in the primary action. Defendant moved for summary judgment, arguing that Dove was "simply a tenant" and "[t]hus, [Defendant] correctly concluded [Dove] was excluded from coverage under [the policy] as a tenant." At the hearing on Defendant's motion, Defendant argued that Dove could not be considered a "real estate manager" (and thereby covered by the policy) based on her limited maintenance duties as a tenant. Dove and Tapia argued that the question the district court had to answer was not whether Dove was, in fact, a real estate manager, but whether the facts as known to or discoverable by Defendant suggested that Dove was potentially covered by the policy.

**{9}**     The district court granted Defendant's motion for summary judgment, finding that Dove was a tenant and "not a property manager[2] and, thus, she was excluded from coverage under [the policy]." Dove and Tapia appealed.

---

[1]Joyce's domestic partner was also a named defendant in the lawsuit but was dismissed when it was determined that she had no interest in the Santa Fe property.

[2]Per Defendant's policy, we use the term "real estate manager" though we observe that the district court and the parties use the terms "real estate manager" and "property manager" interchangeably.

**DISCUSSION**

**Standard of Review**

**{10}** We review the district court's grant of summary judgment de novo. *See Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 ("An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo."). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "All reasonable inferences are construed in favor of the non-moving party." *Montgomery*, 2007-NMSC-002, ¶ 16 (internal quotation marks and citation omitted). "Furthermore, the interpretation of an insurance contract is a matter of law, which we review de novo." *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 30, 139 N.M. 274, 131 P.3d 661.

**Duty to Defend**

**1. Applicable Case Law and Analyses**

**{11}** "The obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy." *Miller v. Triad Adoption & Counseling Servs., Inc.*, 2003-NMCA-055, ¶ 8, 133 N.M. 544, 65 P.3d 1099. In this regard, our appellate jurisprudence establishes certain interpretive requirements in determining whether an insurance contract triggers an obligation to defend in a given set of circumstances. First, an "insurance company is obligated to defend when the complaint filed by the claimant alleges facts potentially within the coverage of the policy." *State Farm Fire & Cas. Co. v. Price*, 1984-NMCA-036, ¶ 18, 101 N.M. 438, 684 P.2d 524, *overruled on other grounds by Ellington v. N.N. Inv'rs Life Ins. Co.*, 1991-NMSC-006, 111 N.M. 301, 805 P.2d 70; *see also Miller*, 2003-NMCA-055, ¶ 9 ("If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured."). Second, there is a duty to defend when the facts in the complaint "are not stated with sufficient clarity so that it can be determined from the face of the complaint whether the action falls within the coverage of the policy." *Am. Emp'rs Ins. Co. v. Cont'l Cas. Co.*, 1973-NMSC-073, ¶ 9, 85 N.M. 346, 512 P.2d 674. "[A]ny doubt about whether the allegations are within policy coverage is resolved in the insured's favor." *Price*, 1984-NMCA-036, ¶ 18. Third, "[i]f the duty to defend does not arise from the complaint on its face, the duty may arise if the insurer is notified of factual contentions or if the insurer could have discovered facts, through reasonable investigation, implicating a duty to defend." *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006-NMCA-151, ¶ 14, 140 N.M. 720, 148 P.3d 806. In New Mexico, "an insurance company is required to conduct such an investigation into the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claim in order to determine whether it has a duty to defend." *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-

4

003, ¶ 23, 128 N.M. 434, 993 P.2d 751. *But cf. Guar. Nat'l Ins. Co. v. C de Baca*, 1995-NMCA-130, ¶ 14, 120 N.M. 806, 907 P.2d 210 (explaining that "when an insured is sued, the insurer has no duty to defend if the allegations in the complaint clearly fall outside the policy's provisions").

**{12}** Regarding the nature and duration of the defense owed, "[i]t is the norm that an insurer, though denying coverage and liability, must nonetheless defend its insured unless and until it receives a judicial ruling in its favor relieving it of any further obligations." *Loya v. Gutierrez*, 2015-NMSC-017, ¶ 42, 350 P.3d 1155; *see Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 830 (D.N.M. 1994) ("Where coverage under the policy is in some doubt, the proper remedy, under New Mexico law, is for the insurer to seek a court determination as to non-coverage of the primary action; mere unilateral determination that there is no duty to defend is not an acceptable remedy for the insurer." (internal quotation marks and citation omitted)). So an insurer may undertake its duty to defend and seek a declaratory judgment that the alleged insured is not covered by the policy, thereby relieving it of its duty to defend. *See Found. Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038, ¶¶ 4, 8-12, 97 N.M. 618, 642 P.2d 604; *see also* 44 Am. Jur. 2d *Insurance* § 1405 (2017) (explaining that an insurer's three options when presented with a request to defend a claim that may be outside a policy's coverage are to "seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, defend the insured under a reservation of rights, or refuse either to defend or to seek a declaratory judgment at its peril that it might later be found to have breached its duty to defend"). Or, when an insurer doubts the existence of coverage, but nonetheless assumes its duty to defend, it may proceed with defending the insured under a reservation of rights to later deny coverage. *See Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 1990-NMSC-094, ¶¶ 14, 16, 110 N.M. 741, 799 P.2d 1113. The ultimate determination—separate from the question of an insurer's duty to defend—of whether a claim falls within or outside of a policy's coverage must generally "be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question." *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 1994-NMSC-017, ¶ 11, 117 N.M. 207, 870 P.2d 745.

**{13}** Here, Defendant did not seek a judicial ruling relieving itself of its duty to defend. Rather, it unilaterally determined that Dove was not covered under the policy and refused to tender her a defense. It is unclear from the record what, if any, investigation Defendant undertook in reaching its conclusion that Dove did not qualify as an insured. Defendant's letter denying Dove's request does nothing more than quote the "insured" and "named insured" definitions from the policy and gives no further explanation of its basis for concluding that it had no duty to defend Dove. Even assuming Defendant's refusal to defend Dove was based on its good-faith belief that Dove was not covered by the policy because she was merely a tenant, such a good faith belief "is not a defense to the breach of the duty to defend." *Lujan v. Gonzales*, 1972-NMCA-098, ¶ 22, 84 N.M. 229, 501 P.2d 673. That is because the insurer bears the "burden of proving as a matter of law that all claims arose out of an [uncovered] act" and thus has a duty to defend "until it [meets] that burden." *Lopez*, 1994-NMSC-017, ¶ 13.

5

**{14}** The upshot of our case law in this realm is this: an insurer who refuses to defend a covered insured without seeking a judicial determination that the alleged insured is not covered under the policy, *see Mullenix*, 1982-NMSC-038, ¶ 12, or without a voluntary waiver from the insured, *see Garcia v. Underwriters at Lloyds, London*, 2008-NMSC-018, ¶ 19, 143 N.M. 732, 182 P.3d 113, does so at its peril. And that is not only the case in New Mexico. *See, e.g., Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind. Ct. App. 1992) ("An insurer can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril[.]" (alteration, internal quotation marks, and citation omitted)); *J & C Moodie Props., LLC v. Deck*, 2016 MT 301, ¶ 21, 385 Mont. 382, 384 P.3d 466 ("[W]here an insurer refuses to defend its insured, it does so at its peril." (internal quotation marks and citation omitted)); *see also Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 730 (Ariz. 2014) (explaining that an insurer may be liable for damages, breach of contract, and bad faith tort claims stemming from the breach of duty); 44 Am. Jur. 2d *Insurance* § 1405 ("If the insurer desires to show that the claim against the insured is based on facts excluded from the policy coverage and the insurer refuses to defend, it must do so at its peril, and if the insurer guesses wrong, it must bear the consequences of its breach of contract.").

**{15}** We next address the analysis a district court is to apply to resolve an action seeking to declare that an insurer has breached its duty to defend. Our standard in this regard is also whether there was any potential that the claim in the primary action was covered, *see Price*, 1984-NMCA-036, ¶ 18, or whether the claim clearly fell outside of the policy's coverage. *See also C de Baca*, 1995-NMCA-130, ¶ 14 (explaining that an insurer is relieved of its duty to defend when the claim "*clearly* fall[s] outside the policy's provisions" (emphasis added)). If there is any doubt whether the claim was covered, an insurer who refused to defend has breached its duty. *See Price*, 1984-NMCA-036, ¶ 18. In a breach of the duty to defend case, the district court should not attempt to determine the merits of the underlying claim in the primary action, i.e., whether the claim was *actually* covered. *Cf. Risk Mgmt. Div., Gen. Servs. Dep't of State ex rel. Apodaca v. Farmers Ins. Co. of Ariz.*, 2003-NMCA-095, ¶ 7, 134 N.M. 188, 75 P.3d 404 (explaining that when a district court is presented with an insurer's request for declaratory judgment that it has no duty to defend, the question is "whether the district court ha[s] before it sufficiently developed facts to conclude as a matter of law . . . that [an] exclusion applies" or that the occurrence is outside the policy's coverage). That is because an insurer who unilaterally refuses to defend effectively waives its ability to later challenge the underlying merits as to coverage because the ultimate question of coverage is to be properly resolved in the primary action in order to protect the interests of the insured and for judicial efficiency. *See Progressive Cas. Co.*, 1990-NMSC-094, ¶ 18 (explaining that "[a]n insurer suffers serious consequences upon its unjustified failure to defend after demand"); *see also State Farm Fire & Cas. Co. v. Ruiz*, 36 F. Supp. 2d at 1308, 1316-18 (D.N.M. 1999) (reviewing New Mexico insurance law, including conflicting federal court interpretations of it, and concluding that when an insurer "unjustifiably refuse[s] to defend its insured, it 'will not be heard to complain that the claims might not have been within the coverage' " (quoting *Valley Improvement Assoc. v. United States Fid. & Guar. Corp.*, 129 F.3d 1108, 1125-26 (10th Cir. 1997))); *Mullenix*, 1982-NMSC-038, ¶ 12. In other words, the

question in a breach of duty to defend action is less exacting—and thus easier for the claimant to prevail on—than the underlying question presented when the parties are disputing whether there is coverage.

**{16}** Here, the district court addressed the underlying merits of the question of coverage—i.e., whether Dove was a "real estate manager" and thus covered by the policy—rather than the less exacting question on which declaratory judgment was sought. This difference is not analytically trivial because Defendant's duty to defend depended not on whether Dove was actually covered, but rather on whether she was *potentially* covered. *See Price*, 1984-NMCA-036, ¶ 18. In order for its ruling to be affirmable, then, the district court must have been indisputably correct in its assessment that Dove was not a real estate manager under the policy, i.e., that the complained-of occurrence in the primary action clearly fell outside the policy's coverage. *See C de Baca*, 1995-NMCA-130, ¶ 14; *see also Bernalillo Cty. Deputy Sheriffs Ass'n v. Cty. of Bernalillo*, 1992-NMSC-065, ¶¶ 3-5, 114 N.M. 695, 845 P.2d 789 (holding that the insurer had no duty to defend an insured where it was undisputed that the alleged acts occurred after the expiration of the policy); *Ins. Co. of N. Am. v. Wylie Corp.*, 1987-NMSC-011, ¶¶ 21-24, 105 N.M. 406, 733 P.2d 854 (holding that the insurer had no duty to defend where a complaint's allegations placed it "directly within the exclusionary clause" of the policy). In order to determine whether the district court was indisputably correct, we must do two things: (1) consider the term "real estate manager" as contained in the policy, and (2) determine whether the facts in the primary action potentially brought Dove within the meaning of that term. If Dove was possibly acting as a real estate manager for Joyce when Tapia was injured, the district court's order of summary judgment must be reversed.

## 2. The Term "Real Estate Manager"

**{17}** "Insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Hinkle v. State Farm Fire & Cas. Co.*, 2013-NMCA-084, ¶ 18, 308 P.3d 1009 (alteration, internal quotation marks, and citation omitted). In construing an undefined term in an insurance contract, "[t]he district court must ultimately decide what coverage the parties agreed to under the policy." *Apodaca*, 2003-NMCA-095, ¶ 8. "If a policy is clear and unambiguous, then the court does not construe the terms; it merely gives the terms their usual and ordinary meaning." *Id.* "But where a policy term is reasonably and fairly susceptible of different constructions, it is deemed ambiguous and must be construed against the insurance company as the drafter of the policy." *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 10, 285 P.3d 644 (internal quotation marks and citation omitted). "Although far from dispositive, the lack of a definition in a policy may be one indication of ambiguity." *Id.* ¶ 16.

**{18}** Here, Defendant's rental dwelling policy is neither clear nor unambiguous. Rather, it defines "insured" to include, among other parties, "any person or organization while acting as real estate manager for [Joyce]." The policy does not define the term "real estate manager." The parties disagree whether "real estate manager" is an ambiguous term, yet they

7

generally agree how the term should be defined. Both parties draw our attention to Louisiana cases that have interpreted "real estate manager" to mean " 'one who manages real estate for another' " with the term "manager" meaning " 'a person who has the conduct or direction of a thing.' " *Armand v. Rapides Bank & Tr. Co.*, 98-1664, p.7 (La. App. 3 Cir. 4/7/99); 732 So. 2d 719, 723 (quoting *Savoy v. Action Prods. Co.*, 324 So. 2d 921, 923 (La. App. 3d Cir. 1975) (alteration and internal quotation marks omitted)). They also cite the same *Cambridge Dictionary* definition of "property manager": "[t]he person who is in charge of managing land and buildings[.]" The parties' agreement about how to define the term suggests that the term itself is not facially ambiguous. But none of the definitions proffered by either party—whether from other jurisdictions or various dictionaries—proves particularly helpful in resolving the issue at hand. That is because it is the application of the term—not its definition—about which the parties disagree, meaning that there exists an as-applied ambiguity in this case. *See Apodaca*, 2003-NMCA-095, ¶ 8 ("Even if an ambiguity is not apparent on its face, an ambiguity can arise when otherwise clear policy language appears ambiguous upon application to a particular circumstance." (internal quotation marks and citation omitted)). We thus turn to the substantive merits of the district court's ruling, but only to ascertain if coverage *possibly* extended to Dove as a real estate manager.

### 3.      Whether Dove Was Potentially a "Real Estate Manager"

**{19}**     "When evaluating competing interpretations of a policy, the appellate court views the language of the policy from the standpoint of a hypothetical reasonable insured." *Krieger*, 2006-NMCA-034, ¶ 33 (internal quotation marks and citation omitted); *see also United Nuclear Corp.*, 2012-NMSC-032, ¶ 11 ("Where a term in an insurance policy is found to be ambiguous, the court's construction of the policy will be guided by the reasonable expectations of the insured." (alterations, internal quotation marks, and citation omitted)). The record proper in this case suggests the existence of potentially two hypothetical reasonable insureds: the property owner (Joyce) and the tenant (Dove). As to the property owner, the hypothetical reasonable insured is also a landlord who lives in another state, only visits her residential rental property two times per year, and entrusts the day-to-day care and management of the property—including statutorily-imposed obligations—to third parties, sometimes without compensation. *See* NMSA 1978, § 47-8-20(A)(3) (1999) (requiring owners to "keep common areas of the premises in a safe condition"). And as to the tenant, in this instance it is someone who has agreed to undertake additional responsibilities outside of her contractual and statutory obligations as a tenant and has done so for the benefit of the owner. *See* § 47-8-20(D)(1) (explaining that an owner's obligations regarding the care and upkeep of a rental property may only be transferred to a tenant if there is a signed written agreement that is supported by consideration). The question is whether under known facts or those discoverable through reasonable investigation in this case, these hypothetical reasonable insureds would have possibly considered the tenant a "real estate manager," therefore bringing the tenant arguably within the policy's coverage.

**{20}**     Tapia's original complaint contained the following pertinent alleged fact regarding Dove: at the time Tapia approached the property, "he noticed a woman, later identified as . . .

Dove, in the front yard who was watering the flowers." Notably, one of Defendant's own proffered definitions provides that the term "property manag[er]" "can include finding tenants, collecting rent monies and *looking after maintenance such as gardening* and small repairs." (Emphasis added.) Defendant did not dispute Tapia's alleged fact in the primary action: that Dove was watering in the front yard at the time the incident occurred. This should have initially alerted Defendant to the possibility that Dove fell within the policy because Dove was performing a function commonly associated with "real estate management" per Defendant's own definition. Particularly when coupled with Defendant's stipulation that Dove was the renter of the *back* unit, Defendant's knowledge that Dove was watering the common *front* yard at the time of the incident should, at the very least, have reasonably prompted Defendant to investigate whether Dove's activity clearly placed her afield of coverage owed pursuant to Joyce's insurance policy. *See Sw. Steel Coil*, 2006-NMCA-151, ¶ 14; *Agora Syndicate, Inc.*, 2000-NMCA-003, ¶¶ 23-24.

{21}    Further, as we have stated, even if the complaint itself was devoid of specificity regarding facts that tend to give rise to Defendant's duty to defend, unpleaded facts later revealed during the course of discovery—or that Defendant could have discovered through reasonable investigation, which it was required to undertake—further establish Dove's potential coverage under the policy. *See* UJI 13-1703 NMRA ("A liability insurance company must act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend."). Indeed, deposition testimony taken shortly after Defendant refused Dove's request for a tender of defense demonstrated the following facts: (1) Joyce lived in California and was not involved in the day-to-day management of the property; (2) Nathan, one of the people with certain real estate management responsibilities for the property, had no involvement in gardening or maintaining the landscaping at the property; (3) Joyce hired a gardener to maintain the common yard in front, including watering; (4) sometime during the summer of 2007, Joyce visited the property, observed that one of the trees in the common yard was not getting enough water, and asked Dove to water the tree and flowerbeds; (5) Dove had a private yard adjacent to her back unit, which was separated from the common yard by a fence; (6) Dove did not typically spend time in the common yard because the main house's windows faced the common yard and Dove wanted to respect the privacy of the main house's tenants; and (7) at the time Tapia was injured by Dove's Bullmastiff, Dove was watering in the common yard per Joyce's request. These alleged or discoverable facts all tend to suggest that Dove was arguably, if not definitively, acting as Joyce's real estate manager (even if but one of several) at the time of the incident and, therefore, covered as an "insured" under the policy.

{22}    While Defendant may well be correct that not every tenant who waters plants is a real estate manager, and that tenants who are fulfilling standard duties to maintain their leased property are not transformed into "property managers" by such performance, such does not eliminate the possibility that Dove could be considered a real estate manager given the particular circumstances of this case. First, by Defendant's own admission, "[t]he only requirement placed on Dove was to maintain the *private yard* associated with the studio apartment she was renting." (Emphasis added.) But at the time of the incident, Dove was not

9

in her private yard—she was watering in the *common yard*. Dove stated that she was not watering on her own initiative—in which case she might be less characterizable as a real estate manager than as a conscientious tenant—but had been asked by Joyce to water the common area in order to "make sure things stayed alive." Considered in sum, the asserted facts suggest that Dove could very well have been acting as Joyce's real estate manager when Tapia was injured. *See* § 47-8-20(A)(3), (D)(1) (providing that it is a property owner's obligation to "keep common areas of the premises in a safe condition" and allowing an owner to delegate his or her maintenance responsibilities to a tenant "only if . . . the agreement of the parties . . . is set forth in a separate writing signed by the parties and supported by consideration"). This legitimate question regarding the coverage here gives rise under our case law to a duty on Defendant's part to defend Dove until the dispute was definitively resolved by a fact-finder and it could be resolved by the district court as a matter of law whether Dove was covered by the policy. *See Lopez*, 1994-NMSC-017, ¶¶ 11-13; *Mullenix*, 1982-NMSC-038, ¶¶ 8-12; *see also Ruiz*, 36 F. Supp. 2d at 1315 (citing with approval *Lopez* and *Mullenix* and concluding that "an insurer who has in its possession facts contrary to or not pled in the complaint demonstrating that the policy does not cover the injury alleged must bring these facts to the attention of the trial court in the primary action and request to be relieved of the duty to defend, rather than merely abdicating its responsibility to its insured").

**{23}** Defendant's argument that Dove could not have been a real estate manager because Joyce "had already hired and paid a real estate manager for the management activities" at the property is also unavailing. Nothing in the policy's language suggests that there can only be one real estate manager for a given property. In fact, the policy clearly contemplates the possibility of many managers by providing that an "insured" includes "*any* person or organization while acting as real estate manager for the named insured." (Emphasis added.) Nor does the policy require that a person be compensated in order to qualify for coverage as a real estate manager. This is made evident by the fact that there is an additional provision that defines "insured" to mean "any *employee* of the named insured while acting within the scope of that employment[.]" (Emphasis added.) *See United Nuclear Corp.*, 2012-NMSC-032, ¶ 16 (explaining that "[i]nsurance policy terms cannot be analyzed in a vacuum, and a policy must be construed in its entirety, with each clause interpreted in relation to others contained therein" (internal quotation marks and citation omitted)); *see also The Random House Dictionary of the English Language* 468 (unabridged ed. 1971) (defining "employee" as "a person working for another person or a business firm for pay").

**{24}** We are also unpersuaded by Defendant's arguments that Dove cannot as a matter of law be considered a real estate manager because Dove and Joyce did not have a "legal relationship . . . that would satisfy the intent of [Defendant's] policy" and because Dove had "no formal responsibility to maintain the yard[.]" It is precisely a situation like this—where an unwitting tenant has informally assumed the statutorily imposed obligations of an owner, *see* § 47-8-20(A)(3), and rendered a service for the owner's benefit without compensation—in which a hypothetical reasonable insured (both the owner (Joyce) and the tenant/real estate manager (Dove)) would reasonably expect to be covered by the policy. *See*

*W. Commerce Bank v. Reliance Ins. Co.*, 1987-NMSC-009, ¶ 8, 105 N.M. 346, 732 P.2d 873 (explaining that "the test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean"). While things such as professional qualifications, prior management experience, a contract for services, one's title or self-identified profession, and compensation may be evidence that one is a real estate manager, the absence of any or all of these indicators is not dispositive of the question of whether one is *acting* as a real estate manager at a given time. The policy itself does not limit construction of the term "real estate manager" to only those who have a "legal relationship" with a property owner, receive compensation, or are professional property managers. And if Defendant had wished to so limit the policy's coverage by defining "real estate manager" more narrowly, it could have done so. Because it did not, we construe the term against Defendant and hold that the facts tended to show that Dove was at the very least potentially acting as Joyce's real estate manager at the time of Tapia's injury and was therefore arguably within the policy's coverage. *See United Nuclear Corp.*, 2012-NMSC-032, ¶ 10. As such, Defendant had a duty to defend Dove in the primary action, and its unilateral refusal to do so constituted a breach of that duty.

## CONCLUSION

**{25}** The district court erred in granting summary judgment to Defendant. We reverse and remand for the district court to enter judgment consistent with our ruling.

**{26}** **IT IS SO ORDERED.**

 

 

**J. MILES HANISEE, Judge**

**WE CONCUR:**

 

**LINDA M. VANZI, Chief Judge**

 

**M. MONICA ZAMORA, Judge**